[Cite as *In re S.U.*, 2014-Ohio-5166.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


IN RE:                                       :

    S.U., et al.                            :          CASE NO. CA2014-07-047

                                         :          O P I N I O N
                                                11/21/2014

                                         :

                                         :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2012JC04394


Dever Law Firm, Scott A. Hoberg, 9146 Cincinnati-Columbus Road, West Chester, Ohio 45069, for appellant, D.U.

Suellen M. Brafford, 285 East Main Street, Batavia, Ohio 45103, for M.S.

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee, Clermont County Department of Job and Family Services


**HENDRICKSON, P.J.**

{¶ 1} Appellant, the biological mother of S.U. and M.S., appeals a decision of the

Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of

the two children to a children services agency.

{¶ 2} Clermont County Children's Protective Services filed a complaint on April 18,

2012, alleging that M.S. was a neglected child and S.U. was a dependent child. The complaint indicated that the agency had been working with the family, who was living in a homeless shelter. The agency received reports that M.S., who was seven months old, was not being fed enough and was very thin. M.S. was taken to the pediatrician and on examination, weighed 12 pounds and 15 ounces and was diagnosed with failure to thrive. In addition, the complaint alleged that appellant was "kicked out" of the homeless shelter due to threats to kill other residents.

{¶ 3} On July 5, 2012, M.S. was adjudicated neglected and S.U. was adjudicated dependent. A case plan was prepared for the family that required appellant to obtain and maintain housing and income, to complete a mental health assessment and follow recommendations, and to complete parenting classes. After two six-month extensions on the case, the agency filed for permanent custody of the children on August 28, 2013.

{¶ 4} Appellant failed to appear at the scheduled permanent custody hearing. The agency presented the testimony of the caseworker, who testified that the children have been in agency custody since April 17, 2012. M.S.'s father was initially involved in the case because he was living with appellant. The caseworker testified that M.S.'s father was only involved because he was living with the mother, and he did not want a case plan. She testified that the father has been incarcerated on and off during the case and was currently scheduled to be released in 2015. She further testified that the father has never contacted the agency and has had no contact with the child while in foster care.

{¶ 5} The caseworker further testified that in November 2012, appellant had an apartment and was working at Wendy's. However, appellant terminated her employment with Wendy's in February 2012, due to a pregnancy. Appellant lost her apartment around October 2013, and for a while was living "from home to home" with friends. The caseworker testified that appellant is now living with her mother in Washington Court House and is not

employed. The caseworker testified that when appellant stated that she wanted to move in with her mother, the caseworker discussed this option with appellant and told her it would not be possible for appellant to regain custody of the children while living with the grandmother. The caseworker explained that in the past, children's services had substantiated abuse by the grandmother, which made the grandmother's home inappropriate for appellant's children.

{¶ 6} The caseworker also testified that appellant began going to Lifepoint in June 2013 to address the mental health requirements of the case plan. Appellant was diagnosed with major depressive disorder, panic disorder and borderline personality disorder with primitive instincts. She began counseling, but her attendance was not consistent. She attended counseling for three months, and her last visit was October 25, 2013. The caseworker indicated that she had several conversations with appellant in which she advised appellant about the importance of being consistent with her treatment. She indicated during these conversations, appellant was resistant, and told the caseworker she would engage in consistent treatment, but usually did not.

{¶ 7} In addition, the caseworker testified that appellant did not successfully complete parenting classes and was not consistent with visit. In December 2013, four visits were scheduled, but appellant only attended one visit. The caseworker indicated the children are doing well in the foster home where they have been placed since July 2013. She testified that the foster mother is very loving, kind and patient with the children and has worked hard to meet all of the children's needs, including addressing problems with S.U.'s speech.

{¶ 8} Kristy Macku, a parent educator at Child Focus, discussed her interaction with appellant during parenting classes that took place with visitations. Appellant met with Macku for a total of ten sessions, although appellant did not attend five of the initially scheduled sessions, and Macku had to get an extension to continue working with appellant because the missed visits were a violation of the attendance policy. Macku indicated that the goals for

appellant were to identify and understand the basic needs of the children and how to safely and effectively meet those needs, along with demonstrating knowledge of age-appropriate behavior and discipline and the importance of age-appropriate interaction. The parenting instruction took the form of observations, coaching and modeling appropriate parenting practices. Macku testified that she took a variety of approaches with appellant from just observing to intervening into a situation with feedback.

{¶ 9} Macku testified that appellant often used sarcasm and inappropriate comments and this behavior would confuse the children. She instructed appellant not to use sarcasm, as it is confusing for a child, but appellant did not feel there was an issue with her behavior. Appellant would swear during visits and need to be redirected. She would also raise her voice, swear and use a harsh tone with the children that made them cry. Again, Macku attempted to redirect appellant and instruct her that she needed to talk more calmly to the children. Appellant would also get upset and frustrated at times, even when there weren't behavioral problems and there was no reason to get upset. Macku indicated appellant was "pretty resistant" to suggestions and would argue with her on simple things, saying the information was not beneficial to her. At the start of the program, appellant informed Macku that she did not need any sort of information on parenting. Appellant was not consistently engaged with the instructor or children during sessions and did not consistently provide for the children's needs during visits. Macku testified that she would tell appellant to stop certain behavior and give her examples of appropriate things to do.

{¶ 10} Macku indicated she had concerns with appellant's interactions with her children. During visits, she had to intervene for the safety of the children, such as when M.S. put things in his mouth and appellant was not paying attention. In her testimony, Macku described an incident in which appellant gave S.U. a bracelet. The child did not want to wear it, but appellant kept insisting the child wear it, until S.U. started crying and stated that she

wanted "mommy," meaning her foster mother. Appellant then stated several times that she was the child's mother and Macku had to intervene and diffuse the situation. Macku testified that appellant is not consistent in her interaction with the children and is often focused on what she wants or needs herself, rather than what the children need or want. For example, she indicated if appellant wanted to color, she would tell the children to color with her and then become frustrated if the children did not want to color. According to Macku, appellant was resistant to change and made very limited progress on the goals of the parenting education, with the only progress being the extremely limited issue of identifying some people who may not be appropriate to supervise the children. Based on her work with appellant, Macku concluded that appellant is not able to identify and meet the needs of the children.

{¶ 11} Cheryl Dorsch testified that she worked with appellant in parenting classes at A Caring Place in August through September 2013. She indicated appellant was very upset and agitated throughout the classes. Appellant told Dorsch she was homeless and "just stayed wherever she could." She testified that appellant focused on herself and her past experiences during the classes, and not on the topic the class was learning. Dorsch indicated appellant did not receive a certificate of completion because she missed the first class session, and although she was given the opportunity to make up the class, failed to do so.

{¶ 12} Lindsay Jones, who supervises visitation for the agency, also testified similarly to Macku regarding appellant's visitations with the children. She indicated that in general, it is rare to intervene during a visitation, but she had to intervene in about half of the visits between appellant and her children. Jones testified that appellant has very unrealistic expectations of the children and uses harsh tones and sarcasm in speaking with them, which is not appropriate because the harsh tone and sarcasm are hurtful and cause the children to cry. She indicated S.U. has speech problems and appellant would become irritated with S.U.

if she could not understand what the child was trying to say. S.U. would often end up crying at visits, and appellant would not let go of the issue, causing distress to the child.

{¶ 13} Jones described an incident in which appellant did not like the clothes S.U. wore to a visit, because they were too bright and had too many colors. When S.U. began to cry because of appellant's comments, appellant refused to let the subject go, causing Jones to intervene in the situation. In another incident Jones described, appellant overreacted because S.U. brought a pencil sharpener to a visit and S.U. became upset and asked for her foster mom. Appellant became upset with the child and threatened not to come to any more visits.

{¶ 14} Jones testified that appellant would also frequently swear at the children during visits, and she would have to intervene and ask appellant not to swear. Jones indicated S.U. was initially receptive to appellant at visits, but lately has become less enthusiastic. She stated that the child is whiny, leaves the room during visitations and is excited to leave the visit.

{¶ 15} Julie Jordan, an adoption supervisor, also testified at the hearing. She discussed the procedures and process that the children would undergo if placed for adoption. Jones indicated the current caregiver has expressed a desire to provide a permanent home for the children and would be given preferential consideration if the children were placed for adoption.

{¶ 16} After the first hearing date, the court granted a continuance to allow appellant to appear and present evidence on a later date. On March 14, 2014, the second hearing date, appellant testified that she has lived in Washington Courthouse with her mother and her younger, six-year-old sister since August 2013. She stated that she has talked to the manager at Cheap Tobacco and is going to be hired as a vapor cigarette saleswoman. Appellant testified that she believes her housing with the children's grandmother is stable and

she does not agree that the children cannot live with their grandmother. The grandmother's rent is paid for by a community program and the grandmother receives Social Security benefits for appellant's younger sister that the family uses for water, electricity and other needs. Appellant testified that she went to Lifepoint for a mental health evaluation and counseling, but stopped going because she lost her transportation.

{¶ 17} Appellant testified that she last visited the children in January and that she relies on others for transportation. She admitted that she had been charged with obstruction of business in Fayette County, but it was reduced to disorderly conduct. Appellant also admitted that she was angry with children's services and claimed that her reaction was based on concern for the children.

{¶ 18} The children's grandmother also testified and indicated her rent is paid for by a community program for chronically homeless people that lasts for three years and may possibly last longer if funding is available. She indicated that she went to most of the visitations at the agency and that she believes appellant interacted as well as she could with the children in the small area provided. She testified that appellant has a loving and bonded relationship with the children. The grandmother testified that she and appellant plan to live together as a two-parent family with the children. She admitted that appellant "lashes out" at people when she is frustrated. The grandmother also admitted that she has a history with children's services that involved accusations that she was abusing appellant, but she claims that she never did anything.

{¶ 19} Finally, appellant's friend testified. She stated that she has known appellant for six years and appellant has great interaction with her children and is a good mother. Appellant's friend also testified that she does not consider the grandmother a danger to the children.

{¶ 20} After considering all of the evidence, the magistrate granted permanent custody

of the children to the agency. Appellant's objections to the magistrate's decision were overruled. Appellant now appeals the trial court's decision to grant permanent custody of the children to the agency and raises the following assignment of error for our review:

{¶ 21} IN A CHILD CUSTODY CASE, THE TRIAL COURT ERRED IN ITS DECISION AND ORDER GRANTING PERMANENT CUSTODY OF THE CHILDREN TO THE AGENCY DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 22} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey,* 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 23} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.,* 12th Dist. Warren Nos.

CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

**{¶ 24}** The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children have been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion.  However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the child/children's best interest.

**{¶ 25}** R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 26}** With respect to R.C. 2151.414 (D)(1)(a), the juvenile court found that the facts demonstrated that appellant had difficulty managing her anger around the children, interacting with them in an appropriate manner and in putting the needs of the children first. The court found that M.S. was not very bonded to appellant and although S.U. was bonded somewhat to appellant, she was becoming increasingly irritated with visitation.  The court

also found that the foster mother is a teacher who is loving, kind and patient with the children and that S.U.'s speech problems have improved in the foster home.

{¶ 27} With respect to R.C. 2151.414(D)(1)(b), the juvenile court indicated that the children are too young to express their wishes, but S.U. refers to the foster family house as "my house" and indicates she likes living there. The court found that the guardian ad litem recommended that the agency be awarded permanent custody of the children.

{¶ 28} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that the children were placed in the agency's custody on April 19, 2012 and have remained in the agency's custody since that time. The court found that the children have been in agency custody for 12 or more months of a 22-month period.

{¶ 29} With respect to R.C. 2151.414 (D)(1)(d), the juvenile court found that the children are in need of a legally secure placement. They have spent almost two years in temporary custody and appellant is still not in a position to provide for many of their needs. S.U.'s father has never been determined and M.S.'s father is considered to have abandoned the child under R.C. 2151.011(C) and 2151.414(E)(10). The court also found that the children are thriving in their current environment which could potentially become a legally secure, permanent placement for them.

{¶ 30} The court also found that appellant still does not have a job, reliable transportation, or safe and stable housing of her own. The court indicated that appellant's ability to learn from the parenting educators was apparently hampered by her inability to receive constructive criticism and/or her belief that she did not need any help in providing for the children's needs. The juvenile court found that the evidence indicates appellant still has difficulty putting the needs of the children before her own needs and in recognizing certain situations as dangerous. For example, appellant sees no problem living with the grandmother, even though appellant still has issues from the abuse she experienced while

growing up. Appellant still has problems relating to the children in an age-appropriate way and controlling her anger, which affects her relationships with the children.

{¶ 31} In her sole assignment of error, appellant argues that the trial court did not consider the best interest factors in light of the evidence presented at the hearing. She argues there was a clear bond between herself and S.U. and the issues that led to filing the complaint were resolved and that her absences from case services were unavoidable. She further argues that she completed parenting classes, the agency did not submit documentary evidence that the grandmother's home was not appropriate and the agency did not look for placement with relatives in Toledo.

{¶ 32} After review of the record, we find no merit to appellant's arguments. The court carefully considered the evidence as it related to each of the best interest factors found in R.C. 2151.414(D)(1) and the court's findings are supported by the record. Although appellant argues there was a bond between herself and S.U., the court considered the parent-child bond, but also considered the fact that S.U. was crying and becoming increasingly distressed at visits.

{¶ 33} Moreover, despite appellant's assertion to the contrary, the problems that led to the filing of the complaint have not been resolved and appellant's absences from case plan services were not unavoidable. Appellant failed to complete the case plan requirements relating to mental health issues, employment and parenting classes. Appellant still did not have safe and stable housing, as she was living with her mother, who has a history with children's services for abusing appellant as a child. Although appellant disputes the court's finding that her mother's home was not appropriate, and argues there was no documentary evidence, the testimony at the hearing that the grandmother had a history with children's services due to abuse of appellant was sufficient to establish the inappropriateness of the home. Appellant made the decision to move in with the grandmother even after being told

that the home was not appropriate and that she would not be able to get her children back while living there.

{¶ 34} Although appellant argues that her absences from services and visitations were unavoidable, the record reflects otherwise. Appellant's transportation problems and some of the resulting absences from services and visitation were due to her decision to move from Clermont County to Washington Court House. Appellant indicated that while in Clermont County she was able to take advantage of transportation options through the county that were unavailable when she moved. In addition, although she testified at the hearing that she has family in Toledo, there was no evidence that appellant mentioned these relatives to the agency as possible placements for the children.

{¶ 35} Finally, appellant argues that she completed parenting classes, but the record indicates otherwise. Macku testified that appellant participated in the parenting program, but that she made little progress and is unable to safely and effectively parent the children. Likewise, Dorsch testified that appellant did not complete all the required sessions, and although she had the opportunity to make up the missed session, she failed to do so. Moreover, the case plan is simply a means to a goal, not a goal in itself, so that even successful completion of a case plan does not preclude a grant of permanent custody. *In re Mraz,* 12th Dist. Brown App. No. CA2002-05-011, 2002-Ohio-7278, ¶ 13. The evidence clearly indicates that despite some participation in parenting classes, appellant has not learned from the classes and is unable to safely and effectively parent the children.

{¶ 36} After carefully reviewing the evidence, we find the trial court's decision was not against the manifest weight of the evidence. Accordingly, appellant's sole assignment of error is overruled.

{¶ 37} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.