[Cite as *In re B.S.*, 2018-Ohio-4385.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

IN THE MATTER OF:                 :

                      CASE NOS.  CA2018-06-011

      B.S.                 :                    CA2018-06-012

                      :          O P I N I O N
                                    10/29/2018

                      :

                      :

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AND20160655

Jess C. Weade, Fayette County Prosecuting Attorney, Sean M. Abbott, 110 East Court Street, 1st Floor, Washington C.H., Ohio 43160, for appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington C.H., Ohio 43160, for appellants

Kristina Oesterie, c/o Fayette County Children Services, 133 South Main Street, Washington C.H., Ohio 43160, guardian ad litem

**RINGLAND, J.**

{¶ 1} Appellants, the biological parents of B.S., appeal from a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of B.S. to appellee, Fayette County Children Services ("FCCS"). For the reasons detailed below, we affirm.

{¶ 2} On November 22, 2016, FCCS filed a neglect and dependency complaint and

requested temporary custody of B.S., a 22-month-old child. The complaint alleged that law enforcement received a report that children were playing in the road unsupervised outside the parents' home.[1] When law enforcement responded, they found the parents' living conditions to be a safety hazard for children. The complaint alleged that Mother and Father's home was cluttered with trash and infested with flies, bugs, and possibly rats or mice. There were also several safety concerns including: exposed wires near a water source, water leaking from the bathroom into a child's room, no flooring upstairs, mice running in and out of a mattress, no sheets on the mattresses, and there were urine stains on the mattresses. The complaint also noted that there was trash, food, and feces throughout the house.

{¶ 3} The children were placed with a family friend while the home was cleaned. The agency also helped the family secure new housing. The children were returned to the parents; however, after less than a month in the new home, the same sanitary issues were again present. The complaint stated that B.S. is unclean and generally wears only a diaper. B.S had scratches and cuts on his body and those injuries were not properly cleaned or treated. The agency also received a call from a school employee that B.S.'s six-year-old uncle was pushing him in a stroller across a street, causing traffic to stop for them.

{¶ 4} The juvenile court granted temporary custody of B.S. to FCCS and placed him in foster care. B.S. was later adjudicated a dependent child. Since that time, B.S. has resided in a certified foster home where he has thrived.

{¶ 5} The case plan for reunification included a mental health assessment, parenting education, and the need to show the agency that Mother and Father could maintain a clean and safe environment for children and provide basic needs. Mother and Father made some progress but continued to struggle with the unsafe and unsanitary condition of their home.

---

1. Mother and Father also resided with Mother's stepfather and his three children who were not subject to the complaint.

{¶ 6}  Throughout the pendency of this matter, the caseworker made three unannounced visits to the parents' home.  In January 2018, the caseworker found that the home was being heated solely by space heaters, the upstairs was not in use due to broken stairs, and bags of trash and clothing were stacked against the baseboard heaters.  On January 22, 2018, FCCS moved for permanent custody, alleging the child had been in its temporary custody for 12 months out of the previous 22-month period.

{¶ 7}  At an unannounced visit in February 2018, Father met the caseworker by the front door and closed the door behind him.  Father had large scratches on his neck and was initially hesitant to have the caseworker enter the residence, claiming that Mother had the flu, but he later relented.  Upon entering the home, the caseworker discovered that the electricity to the home had been disconnected.  Furthermore, there were continued concerns with the condition of the home.  During the visit, Mother knocked over two soda cans that had been sitting on the floor, but made no attempt to pick up the cans or clean the area.  The case worker observed that the floor was sticky and there were five or six piles of animal feces in the house, along with what she believed was dried urine.  The caseworker stated that the residence smelled of garbage and animal feces and there were open trash bags on the floor. Also, the stairs to the second floor were still broken.

{¶ 8}  On March 2018, the caseworker made her final unannounced visit.  The caseworker stated that she had to knock on the door for several minutes.  When the caseworker entered the home, she observed that the conditions remained poor.  The caseworker observed smoke in the living room due to a burning incense stick that was stuck into the drywall of the home.  The stairs had been partially, but not completely repaired.  The caseworker also observed liquid feces and urine smeared on the floor in the living and dining rooms.  Several trash bags of garbage were in the home and some of those had been torn open.  In addition, the caseworker noted that B.S.'s bed was in an alcove at the top of the

stairway next to a dog crate. The dog crate was covered in dog food and dried feces. The alcove had no door and the stairs were unguarded. Furthermore, the cat litter box was on its side with litter stuck to the bottom.

{¶ 9} The matter proceeded to final disposition where testimony and evidence was presented by all parties. After taking the matter under advisement, the juvenile court granted the motion for permanent custody. Mother and Father now appeal the juvenile court's decision granting permanent custody of B.S. to FCCS, raising one assignment of error for review:

{¶ 10} THE TRIAL COURT'S DECISION TO GRANT FAYETTE COUNTY CHILDREN'S SERVICES PERMANENT CUSTODY IS NOT SUPPORTED BY SUFFICIENT CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} In their sole assignment of error, Mother and Father argue the juvenile court's decision granting permanent custody of B.S. to FCCS was not in his best interest. In support of their argument, Mother and Father allege the juvenile court's decision was not supported by sufficient clear and convincing evidence and was against the manifest weight of the evidence. After a thorough review of the record, we find Mother and Father's assignment of error is without merit.

{¶ 12} Before natural parents' constitutionally protected liberty interest in the care and custody of their child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court

- 4 -

will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 13} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 14} In this case, the juvenile court found by clear and convincing evidence that B.S. had been in the temporary custody of FCCS for more than 12 months of a consecutive 22-month period as of the date the agency moved for permanent custody. This finding is undisputed. Rather, Mother and Father contest the juvenile court's finding that granting permanent custody of B.S. to FCCS was in his best interest.

{¶ 15} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

- 5 -

[T]he court shall consider all relevant factors, including, but not limited to the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the trial court noted that B.S. has had regular visitation with his parents and is bonded with them. However, the juvenile court also noted that B.S. is bonded with his foster family as well and has made great strides since placement. B.S.'s foster family is interested in adopting B.S.

{¶ 17} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that, due to his young age, B.S. was unable to express his wishes.

{¶ 18} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the custodial history of B.S. The juvenile court found B.S. was adjudicated dependent and had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 19} In considering R.C. 2151.414(D)(1)(d), the juvenile court found B.S. is in need

of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way B.S.'s needs can be achieved. Despite assistance from the agency and having been given numerous opportunities, Mother and Father have demonstrated that they are unable to maintain a safe and appropriate residence for B.S. Since August 2016, there has been a safety plan in place to remedy the home conditions. However, the home continues to present serious sanitary and safety issues. The GAL recommended that permanent custody be granted to the agency and opined that it is not safe to return B.S. to his parents.

{¶ 20} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court found that none of the factors set forth apply.

{¶ 21} Based on these findings, the juvenile court found by clear and convincing evidence that it was in B.S.'s best interest to grant permanent custody to FCCS. On appeal, Mother and Father dispute the juvenile court's decision and argue that the majority of the problems associated with their home were caused by the dogs and cats. Mother and Father argue that the problems have now been remedied by leaving the animals permanently outside and not allowing them inside the home. In addition, Mother and Father argue that they are bonded with B.S. and have made substantial progress in their case plans and in making their home clean and safe for B.S.

{¶ 22} We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of B.S. is supported by clear and convincing evidence and was not against the manifest weight of the evidence. Though Mother and Father have completed some case plan requirements, it is well-established that the completion of certain case plan requirements does not preclude a grant of permanent custody. *In re Mraz*, 12th Dist. Brown Nos. CA2002-05-011 and CA2002-07-014, 2002-Ohio-7278, ¶ 13; *In re S.U.*, 12th Dist. Clermont No. CA2014-07-047, 2014-Ohio-5166, ¶ 35 ("case

plan is merely a means to a goal and not a goal in itself").

{¶ 23} In the present case, Mother and Father have been unable to show that they can provide B.S. with a clean and safe environment or provide for his basic needs. As this court has previously stated parents are "afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re C.M.*, 12th Dist. Clermont No. CA2016-07-051, 2017-Ohio-57, ¶ 26. Mother and Father have been given ample opportunity to rectify their situation but have been unable or unwilling to correct the deplorable, unsanitary, and dangerous condition of their home. As correctly found by the trial court, B.S. needs a legally secure placement and Mother and Father have demonstrated that they will not maintain a safe and appropriate residence for him. Since his placement with the foster family, B.S. has received appropriate care and is bonded with them.

{¶ 24} In light of the foregoing, we find the juvenile court's decision was supported by the evidence and find no error in the juvenile court's decision to grant permanent custody to CCDJFS. Appellants' sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.