[Cite as *In re T.P.*, 2016-Ohio-5780.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN THE MATTER OF:                              :

      T.P.                              :        CASE NO.   CA2016-03-012

                                      :        O P I N I O N
                                                    9/12/2016

                                      :

                                      :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2013 JC 04600

Aaron J. Manter, 285 East Main Street, Suite 6, Batavia, Ohio 45103, guardian ad litem

Dever Law Firm, Scott A. Hoberg, 9146 Cincinnati-Columbus Road, West Chester, Ohio 45069, for appellant, S.M.

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee, Clermont County Department of Job & Family Services

**RINGLAND, J.**

{¶ 1} Appellant, the biological mother of T.P. ("Mother"), appeals a decision of the

Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of

T.P. to appellee, the Clermont County Department of Job and Family Services ("CCDJFS").

For the reasons detailed below, we affirm.

{¶ 2} On October 15, 2013, CCDJFS filed a dependency complaint and requested

temporary custody of T.P., who was five days old. The complaint alleged that CCDJFS received a report stating that T.P. had tested positive for amphetamine at birth and his parents had a history of drug abuse. The report also alleged that CCDJFS held temporary custody of T.P.'s older sister who had also testified positive for drugs at birth. The juvenile court granted temporary custody of T.P. to CCDJFS and placed him in foster care. T.P. was later adjudicated a dependent child. Since the time of T.P.'s release from the hospital, he has resided in the same certified foster-to-adopt placement with his older sister. T.P.'s older sister has been adopted by the foster family.

{¶ 3} Mother's case plan for reunification included housing, income, mental health treatment, drug treatment, and parenting education. Mother did make some progress in the completion of her case plan, particularly with her completion of a substance abuse treatment program. However, the record indicates that CCDJFS found it necessary to exercise caution with respect to Mother since she exhibited a co-dependency on T.P.'s father ("Father"), an individual with a history of drug involvement and allegations of domestic abuse. Throughout the pendency of these proceedings, Father has failed to take any steps to control his drug involvement and has otherwise shown no interest in reunification with T.P.

{¶ 4} Meanwhile, T.P. has thrived in his foster family and is overcoming the very serious medical concerns that were present during the early stages of his life. For instance, the record reflects that T.P. had severe drug withdrawal symptoms from the time of his birth and was prescribed methadone and phenobarbital to overcome those withdrawals. However, at the time of the permanent custody hearing, T.P. had completed occupational therapy and physical therapy and was receiving continued care for cognitive delay and fine motor skills.

{¶ 5} On March 19, 2015, CCDJFS moved for permanent custody. In support of permanent custody, CCDJFS introduced the testimony of the caseworker, the foster mother, and the guardian ad litem ("GAL"). The caseworker testified about Mother's use of

amphetamines during pregnancy and T.P.'s dependency and withdrawal from the drugs after he was born. Although Mother had made progress in her case plan, the agency had continued concern of a co-dependent relationship with Father. Considering Mother's stream of income, the agency alleged that Mother is financially dependent on T.P.'s father and caseworkers have observed him staying at Mother's residence, despite her insistence that she is no longer in a relationship with him. Though Mother did successfully complete a drug treatment program, the caseworker testified about Mother's lengthy history with drug dependency and expressed concerns that Mother has not taken steps to reduce her dependence on suboxone.

{¶ 6} The foster mother testified about T.P.'s condition at birth and progress while under her care. Due to medical concerns, T.P. was in the hospital for 31 days following his birth and was placed on a number of medications for withdrawal symptoms. In their care, T.P. is now meeting development goals and is well-bonded with the family and his older sister.

{¶ 7} The GAL recommended that permanent custody be granted in favor of CCDJFS. Although the GAL testified that Mother has shown progress in her case plan, the GAL noted that there were concerns about the security of placement with Mother and her relationship with T.P.'s father. The GAL testified that Mother's mental health and stability are agency concerns.

{¶ 8} As part of her case, Mother acknowledged prior issues with drug addiction and T.P.'s health issues, but focused on the progress that she has made in recent months. Mother introduced the testimony of her older and younger sisters. Mother's older sister testified that Mother had undergone a dramatic change and has been working on her mental health issues. The older sister also agreed that Mother is much better without a relationship with Father. Mother's younger sister also testified that she had been residing with Mother for

the past two months, has been contributing financially for their shared apartment, and was supportive of Mother bringing T.P. home.

{¶ 9}  After taking the matter under advisement, the juvenile court magistrate granted the motion for permanent custody.  Mother then filed objections to the magistrate's decision, which were overruled.   The juvenile court, while recognizing Mother's recent efforts, concluded that Mother cannot provide a legally secure placement for T.P. and it was in T.P.'s best interest to be placed in the permanent custody of the agency.  Mother now appeals the juvenile court's decision granting permanent custody to CCDJFS, raising one assignment of error for review.

{¶ 10}  IN A CHILD CUSTODY CASE, THE TRIAL COURT ERRED IN ITS DECISION AND ORDER GRANTING PERMANENT CUSTODY OF THE CHILD TO THE AGENCY DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11}  In her sole assignment of error, Mother argues the juvenile court's decision granting permanent custody of T.P. to CCDJFS was not in T.P.'s best interest.  In support of her claim, Mother alleges the juvenile court's decision was not supported by sufficient clear and convincing evidence and was otherwise against the manifest weight of the evidence. After a thorough review of the record, we find Mother's assignment of error is without merit.

{¶ 12}  Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982).  An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination.  *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6.  A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if

there is a sufficient conflict in the evidence presented. *Id.*

{¶ 13} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 14} In this case, the juvenile court found by clear and convincing evidence that T.P. had been in the temporary custody of CCDJFS for more than 12 months of a consecutive 22-month period as of the date the agency filed for permanent custody. Mother does not dispute this finding. Rather, Mother contests the juvenile court's finding that granting permanent custody of T.P. to CCDJFS was in his best interest.

{¶ 15} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not

- 5 -

limited to the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that Mother has not always consistently attended visitation sessions with T.P., but has been more consistent in the months prior to trial. The juvenile court noted that Mother conducted herself appropriately during those sessions. The juvenile court also noted, however, that the foster family is well-bonded with T.P. and have taken special care to assist him through his withdrawal and developmental issues. T.P. has lived with the foster family since his release from the hospital and has a very strong bond with his sister who was adopted by the foster family. While stating that the sibling bond was only one factor in consideration of the best interest factors, the juvenile court noted that it "believes that it is highly important not to deprive T.P. of his relationship with [his sister] because: (1) this relationship has been a source of consistency for him, and (2) with T.P.'s social and emotional delays, the impact of a

separation upon him may cause a great setback."

{¶ 17} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that, due to his young age, T.P. was unable to express his wishes. However, the GAL recommended that permanent custody be granted to the agency based upon Father's influence over Mother, the nature of the relationship between T.P. and his sister, and concerns over Mother's mental health.

{¶ 18} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the custodial history of T.P. The juvenile court found T.P. was adjudicated dependent and had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 19} In considering R.C. 2151.414(D)(1)(d), the juvenile court found T.P. is in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way T.P.'s needs can be achieved. The juvenile court noted that Mother currently has a home that appears to be safe from typical household dangers and receives social security, food stamps, and shares some household expenses with her younger sister who recently moved in. However, the juvenile court also questioned the stability of her living arrangements, as Mother had been incarcerated and had also lived with her mother for a period of time during the pendency of this case.

{¶ 20} The juvenile court further addressed Mother's relationship with Father as a source of instability. While Mother maintains that she is not in a relationship with Father and he does not live in her apartment, the juvenile court noted that her "on and off again relationship does not bode well for her ability to provide a safe and secure environment." The juvenile court stated that Mother's home is not secure if she allows Father to exercise his influence over her again. The juvenile court addressed Father's involvement with drugs and history of domestic violence and stated that those issues have not been sufficiently

addressed. The juvenile court further found that Mother had exhibited a great deal of inconsistency in her relationship with Father and their history strongly suggests that she will continue to associate with him, which calls into question her ability to self-protect.

{¶ 21} The juvenile court stated that T.P. needs a home where he can receive care in a consistent manner. The juvenile court also found that Mother did not approach her drug treatment consistently and has had difficulty scheduling transportation in a consistent manner. T.P. requires transportation to doctors, clinics, and necessary therapeutic services. Although Mother's sisters have indicated a willingness to help, the juvenile court noted that the sisters may not always be readily available when needed. Simply, the juvenile court found that Mother "progress came too late in this case to show a solid record of consistency and dependability."

{¶ 22} On the other hand, the juvenile court found that the foster family has a proven track record of consistency and dependability. The foster family has been present to provide comfort through the withdrawal process and has transported T.P. to all appointments and activities. Furthermore, the juvenile court found there are no safety or security issues in the foster family's home. The foster family has expressed interest in adopting T.P. if permanent custody were granted to the agency, just as they did with T.P.'s sister.

{¶ 23} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court noted that Father had his parental rights terminated with respect to T.P.'s sister.

{¶ 24} Based on these findings, the juvenile court found by clear and convincing evidence that it was in T.P.'s best interest to grant permanent custody to CCDJFS. On appeal, Mother disputes the juvenile court's findings and argues that she can provide a secure environment for T.P. and the decision granting permanent custody was not in T.P.'s best interest. Mother asserts that she can maintain housing and income. Mother also contends that she has undergone a dramatic change throughout her treatment over the eight

months prior to trial. Although Mother agrees that completion of a case plan does not provide a de facto right to reunification, she alleges that many of the agency concerns have been addressed throughout the pendency of these proceedings and the completion of her case plan demonstrates that placement with her would be appropriate and legally secure.

**{¶ 25}** We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of T.P. is supported by clear and convincing evidence and was not against the manifest weight of the evidence. Though Mother had substantially completed her case plan and has made significant strides in the months leading to the grant of permanent custody, "[i]t is well-established in Ohio that the completion of case plan requirements does not preclude a grant of permanent custody to a social services agency." *In re Mraz*, 12th Dist. Brown Nos. CA2002-05-011 and CA2002-07-014, 2002-Ohio-7278, ¶ 13. A case plan is merely a means to a goal and not a goal in itself. *In re S.U.*, 12th Dist. Clermont No. CA2014-07-047, 2014-Ohio-5166, ¶ 35. In the present case, there are compelling reasons to weigh the best interest factors in favor of permanent custody to CCDJFS considering the lingering concerns regarding Mother's continued improvement in drug and mental health treatment, her financial stability, and the relationship that she has with Father.

**{¶ 26}** Again, since his release from the hospital, T.P. has received appropriate care from his foster family. The evidence showed that T.P. is bonded with the foster family in the only home that he has known since birth and shares a strong bond with his sister who has been adopted by the foster family. The foster family has taken great care of T.P. throughout his life and is providing him with all necessary tools to overcome the serious developmental issues that were forced on him. Therefore, we find the juvenile court's decision was supported by the evidence and find no error in the juvenile court's decision to grant permanent custody to CCDJFS. Mother's sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.