[Cite as *In re E.W.*, 2017-Ohio-7215.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF:                    :
                                                          CASE NOS.   CA2017-01-001
            E.W., et al.                    :                              CA2017-01-002
                                                                             CA2017-01-003
                                                 :
                                                             O P I N I O N
                                                 :                8/14/2017

                                                 :


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 15-D000072 and 15-D000073


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children Services

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for appellant, J.W.

Tyrone P. Borger, 24 Remick Blvd., Springboro, Ohio 45066, for appellant, S.W.


            **PIPER, J.**

            {¶ 1}   Appellants are the mother of E.W. and C.I. ("Mother"), and the father of E.W. ("E.W.'s Father"), appealing a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody to appellee, Warren County Children Services

("WCCS").[1]

{¶ 2}   On August 5, 2015, WCCS filed a complaint alleging neglect and dependency of the children, and on the same date, the juvenile court conducted an emergency shelter care hearing and placed the children in the temporary custody of WCCS.  The complaint alleged Mother and E.W.'s Father were arrested and charged with endangering children, possession of drug paraphernalia, possessing drug abuse instruments, and possession of cocaine, following a traffic stop with the children in the vehicle.  Following the arrest, WCCS initiated a safety plan and placed the children with the maternal grandmother, but after her hospitalization, WCCS initiated a second safety plan with E.W.'s paternal grandmother.  During an unannounced visit, a caseworker discovered Mother and E.W.'s Father at the home against the parameters of the safety plan, and that the home appeared to have both structural damage and an insect infestation.  Additionally, both Mother and E.W.'s Father admitted to illegal drug use and tested positive for illegal substances.  Therefore, the second safety plan was also terminated.

{¶ 3}   Based on the allegations in the complaint, the juvenile court found probable cause to believe that the issuance of an emergency order was necessary because the children's continued residency at the home was contrary to the children's welfare and ordered them placed in the temporary custody of WCCS.  On October 28, 2015, the juvenile court adjudicated the children neglected and dependent.  WCCS developed case plans for the parents, which included obtaining and maintaining stable housing, cooperating fully with WCCS, remaining free of criminal activity, remaining drug free and submitting to random drug screenings, completing a drug and alcohol assessment and following any recommendations

---

1. We note the biological father of C.I. ("C.I.'s Father") did not appeal the juvenile court's decision granting permanent custody.  E.W. and C.I. are half-siblings referred to collectively as the "children".

therefrom, participating in family counseling, and signing all releases of information at WCCS' request. On August 9, 2016, WCCS moved for permanent custody on the basis the children should not and could not be returned to the parents within a reasonable time period, the evidence in the record did not warrant granting an extension of temporary custody, and granting permanent custody to WCCS was in the children's best interest. The juvenile court proceeded with a hearing and heard testimony from multiple witnesses.

{¶ 4} Alvin Bailey, a drug and alcohol therapist at Solutions Community Counseling and Recovery Center ("Solutions"), testified he completed an assessment with E.W.'s Father on June 23, 2015. From this assessment, Bailey recommended E.W.'s Father follow through with an intensive outpatient program, medication assisted treatment, and a mental health assessment. However, E.W.'s Father failed to return to Solutions to complete the recommendations; therefore, Solutions terminated his services. Bailey also worked with Mother through a substance abuse program at the Warren County Jail from August 31, 2015 thru September 24, 2015. Mother completed every class offered during this period, but failed to complete any recommendations for aftercare, including an intensive outpatient program.

{¶ 5} Michelle Vanderham, a clinical supervisor at Modern Psychiatry and Wellness ("Modern Psychiatry"), testified E.W.'s Father participated in drug treatment services with a counselor from September 2015 to May 2016. E.W.'s Father participated in an intensive outpatient program where he progressed for nine months following a successful detox. In May 2016, E.W.'s Father completed the first and second phases of the intensive outpatient program, but failed to complete the program by not participating in the continuing aftercare phase. E.W.'s Father returned to Modern Psychiatry on August 5, 2016, and, due to the gap in treatment, had to restart the program from the beginning. Modern Psychiatry administered a drug test on the same date, which resulted in a positive test for amphetamines and opiates.

E.W.'s Father returned to Modern Psychiatry on August 9, 2016, then failed to appear again until September 13, 2016, which was the last time Modern Psychiatry had contact with him.

{¶ 6} Darren Hoff, a probation officer with Montgomery County Adult Probation Department Secure Transitional Offender Program ("STOP Program"), testified E.W.'s Father entered the STOP Program on October 12, 2016. The STOP Program aims to engage people who have failed to comply with probation to think critically towards corrective behavior. E.W.'s Father began the program after violating the parameters of his community control. While in the program, E.W.'s Father admitted to having drug problems, including use of heroin and cocaine. At the time of the trial, E.W.'s Father was compliant with the program.

{¶ 7} John Eckman, a parole officer for the Ohio Adult Parole Authority, testified Mother was placed in the treatment in lieu of conviction program in May 2015 in Montgomery County for the above-mentioned drug charges. In July 2015, Eckman was assigned to supervise Mother's case. At that time, Mother was attending Solutions for treatment, and in October 2015, Mother entered a residential treatment program at Adams Recovery Center ("Adams"). In April 2015, Mother graduated from the initial stage of the program and began to meet her aftercare requirements until July 2015, when her illegal drug use resurfaced. Eckman testified he was familiar with E.W.'s Father and that E.W.'s Father and Mother both struggled with drug addiction. As a married couple, each applied pressure to one another for relapse. In September 2016, Eckman referred Mother back to Adams to pursue further treatment when Mother informed him she was struggling to remain sober. Mother stayed only one day at Adams before voluntarily leaving due to personal issues with the staff. Eckman then referred her to Sojourners Recovery Service ("Sojourners") for treatment.

{¶ 8} On October 20, 2016, police arrested Mother for a probation violation when they found her at a Lebanon house with illegal drugs and young children present. Mother

- 4 -

admitted to Eckman she had been using heroin. Her drug screening tested positive for opiates, methamphetamine, and amphetamines. On November 2, 2016, Mother was released from Montgomery County Jail and she entered secure residential placement at Sojourners. Eckman explained he does not have an expected release date for Mother from Sojourners and if she completes the program, she will still be under his probation supervision.

{¶ 9} Mother testified C.I.'s Father has been mostly absent from C.I.'s life and there has been minimal communication between Mother and C.I.'s Father. She explained her struggles with drug addiction, the aforementioned treatment programs, and her eagerness to regain custody of her children. Mother agreed she has not completed many of her case plan services, but that she loves her children and will do anything to regain custody. Mother stated transportation issues prevented her from completing aftercare recommendations and that in August 2016 she left Adams because the counselors were rude and disrespectful. At the time of trial, Mother was at Sojourners to both satisfy the terms of her probation and for personal reasons. Upon completion of the Sojourners program, Mother plans to save money to find a home for her and the children.

{¶ 10} Olivia Taylor and Michaela Parker, the WCCS caseworkers assigned to the present case, testified regarding the various placements for the children. In the first foster home, E.W. bonded with the foster family and C.I. struggled with behavioral and mental health issues. At the time of the hearing, E.W. was thriving in his second foster home and C.I. was receiving treatment at a residential facility. The original case plan included services for Mother, E.W.'s Father, and C.I.'s Father. However, on April 4, 2016, the case plan was amended to remove C.I.'s Father due to his failure to have contact with WCCS, Mother, or C.I. The parents regularly attended visitation and the interactions between them and the

children were positive and appropriate. At one point, Mother's visitation schedule was extended from two hours to four hours. However, upon submitting a positive drug screening, the visitation was reduced back to two hours.

{¶ 11} Positive drugs screens remained an ongoing concern throughout the case, beginning in June 2016 when the parents both tested positive for cocaine. E.W.'s Father submitted an additional drug screen in late June that tested positive for cocaine and opiates. In early July 2016, both parents tested positive for cocaine and fentanyl. Both parents tested positive in late July for cocaine and in early August for methamphetamine, amphetamines, and fentanyl. Beyond the parents' struggles with illegal drug use, the caseworkers stated additional concerns remained regarding C.I.'s extensive mental health issues, which the caseworkers did not feel were addressed during visits.

{¶ 12} Kathleen Hopkins, representing the Court Appointed Special Advocate ("CASA"), testified the children wished to live together with Mother. The CASA representative recommended granting the parents' motions for a six-month extension because C.I. was in a treatment facility for at least six more months and the children were not currently placed in a foster-to-adopt home.

{¶ 13} Following the conclusion of the trial, the juvenile court granted WCCS' permanent custody motion. The present appeal followed.

{¶ 14} E.W.'s Father's Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ABUSED ITS DISCRETION IN NOT GRANTING A MOTION TO CONTINUE THE PERMANENT CUSTODY HEARING AND IN NOT GRANTING FATHER AN EXTENSION OF TIME TO COMPLETE HIS CASEPLAN.

{¶ 16} Mother's Assignment of Error No. 1:

{¶ 17} THE JUVENILE COURT'S DECISION TO GRANT PERMANENT CUSTODY

TO WARREN COUNTY CHILDREN'S SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND FAILED TO MEET THE CLEAR AND CONVINCING STANDARD.

{¶ 18} Mother's Assignment of Error No. 2:

{¶ 19} THE JUVENILE COURT ERRED BY DENYING APPELLANT'S REQUEST FOR CONTINUANCE.

{¶ 20} Mother argues the juvenile court's decision granting permanent custody of the children to WCCS was not in their best interest and was not supported by the manifest weight of the evidence. Additionally, Mother and E.W.'s Father both contend the juvenile court erred in denying their respective motions for a six-month extension of temporary custody so the parents might meet the requirements of their individual case plans. Appellants further claim the juvenile court erred in denying their motions to continue the permanent custody trial to a future date.

{¶ 21} The decision whether to grant or deny a motion for a continuance is left to the trial court's sound discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. In making its determination, the trial court should consider the length of the delay requested, the inconvenience to other litigants, witnesses, opposing counsel, and the trial court, whether the requested delay is for a legitimate reason or dilatory and contrived, whether the requesting party contributed to the circumstances giving rise to the request, and any other factor relevant to the particular facts and circumstances of the case. *Unger* at 67-68. Additionally,

pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."

{¶ 22} R.C. 2151.414(A)(2) requires a juvenile court to hold a hearing on a public children services agency's motion for permanent custody not later than 120 days after the agency files a motion for permanent custody. The juvenile court may, "for good cause shown", continue the hearing for a reasonable period beyond the 120-day deadline. *Id.* However, R.C. 2151.414(A)(2) further provides the juvenile court "shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion."

{¶ 23} At the commencement of the permanent custody trial, E.W.'s Father's counsel requested a continuance of the trial to an unspecified future date. Counsel indicated he was requesting a continuance because he filed an untimely motion to transport E.W.'s Father from the facility where E.W.'s Father was located due to a probation violation. Mother's counsel supported the motion, and likewise requested a continuance, on the basis that it would best serve Mother by permitting her additional time to continue in her rehabilitation program.

{¶ 24} WCCS moved for permanent custody on August 9, 2016 and the trial occurred on November 9, 2016; therefore, the juvenile court had a limited time frame to continue the trial within the 120-day period without a showing of good cause. Mother's rehabilitation program required an additional six months to complete; therefore, a continuance to meet her request would have extended the trial date beyond the 120-day period and near the 200-day statutory requirement for the juvenile court to journalize its ruling on WCCS' motion for permanent custody. With respect to E.W.'s Father's request for a continuance, the juvenile court entertained the request despite the court being convened for the hearing to take place.

The continuance sought was indefinite and would require a lengthy delay. Eventually, all parties indicated if the juvenile court denied the parties' requests, they were adequately prepared to proceed. Therefore, a continuance was not imperative to secure fair treatment of the parties and the juvenile court did not abuse its discretion by denying the requests.

{¶ 25} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 26} The state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's right to custody can be terminated. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*,

161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 27} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.* at ¶ 10.

{¶ 28} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA-2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with

either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 29} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 30} In granting WCCS' motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at trial. With respect to the first statutory factor, the juvenile court found the children were bonded with Mother and E.W.'s Father, but also found that the parents continued their illegal drug use

even during the time period of these proceedings. E.W.'s Father used illegal drugs as recent as the first week of October 2016 and Mother used illegal drugs on October 20, 2016. E.W. is thriving in his current foster placement and C.I. remains in a residential facility for treatment. The juvenile court found the children's only chance at stability is placement in the permanent custody of WCCS so the agency can arrange for the children to be adopted.

{¶ 31} In consideration of the second statutory factor, the juvenile court did not conduct an interview with the children. However, the CASA representative conveyed the wishes of the children through her testimony and she presented a report and recommendation. The CASA representative supported granting the parents' motions for a six-month extension to allow them more time to attempt to accomplish the goals of their respective case plans. It was presented the children wished to reside with Mother and E.W.'s Father.

{¶ 32} With respect to the third statutory factor, the juvenile court reviewed the children's custodial history, and found the children have been in the temporary custody of WCCS since August 5, 2015, and continued to be in WCCS' custody at the time of its decision.

{¶ 33} In considering the fourth statutory factor, the juvenile court found the children's need for a legally secure placement could only be achieved by granting permanent custody to WCCS. Specifically, the juvenile court found Mother and both fathers were unable to meet the needs of the children and they have failed to substantially remedy the conditions causing the children's removal. Mother and E.W.'s Father were unable to demonstrate reunification was possible within a reasonable time; therefore, the possibility of adoption becomes the best chance for the children to achieve a stable and healthy home environment.

{¶ 34} With respect to the fifth statutory factor, the juvenile court found C.I.'s Father

abandoned C.I. pursuant to R.C. 2151.011(C) and has neither made any effort nor expressed any interest in reunification. Additionally, the juvenile court found the children could not be placed with Mother or E.W.'s Father within a reasonable time. In making this determination, the juvenile court examined the factors enumerated in R.C. 2151.414(E). The juvenile court found notwithstanding reasonable case planning and diligent efforts by WCCS, the parents failed continuously and repeatedly to substantially remedy the conditions causing the children's removal.

{¶ 35} Specifically, the parents failed to complete rehabilitative services and failed to utilize material resources made available to them for the purpose of changing their parental conduct. Both Mother and E.W.'s Father failed to demonstrate a change in their behavior or circumstances that caused the children's removal. The parents did not diligently work with WCCS, but did endure multiple incarcerations, failed to obtain employment and housing, and have been unable to refrain from using illegal drugs. Additionally, the juvenile court found Mother and E.W.'s Father demonstrated a lack of commitment toward their case plans and the children by failing to regularly communicate with WCCS when able to do so, as well as the parents were unwilling to provide food, clothing, shelter, and other basic necessities.

{¶ 36} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to WCCS. Mother disputes the juvenile court's consideration of the statutory factors.

{¶ 37} After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence. *In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 31-38 (holding a grant of permanent custody is in a child's best interest where a parent fails to make any progress in his or her case plan and fails to remain drug free). Although Mother testified regarding her

eagerness to become drug free, her love for her children, and her dedication to visitation, there are compelling reasons to weigh the best interest factors in favor of permanent custody to WCCS. The record contains extensive evidence regarding both Mother's and E.W.'s Father's repeated failures to remain drug free, which is the underlying reason for the children's initial removal.

{¶ 38} While Mother made some effort to obtain treatment for her ongoing struggles with drug abuse, Mother has yet to fully complete one case plan. At one point, Mother completed the first phase of her drug treatment program, but then, failed to take any steps towards completing the aftercare phase of the program. This was followed by her relapse and an extended period of positive drug tests. The positive drug tests were for heroin, fentanyl, cocaine, methamphetamine, and amphetamines. Mother testified that she is determined to complete the program she was currently in at the time of trial, but competent, credible evidence, demonstrates Mother's ongoing substance abuse remains a very real concern. Not only has she been unable to complete various drug treatment programs, but she has been incarcerated several times. Her relapse was for an extended period and she continues to maintain her plans to reunite with E.W.'s Father, who the caseworkers testified is a trigger for her illegal drug use.

{¶ 39} Aside from the ongoing drug concerns, a thorough review of the record indicates Mother has failed to take meaningful steps in accomplishing other goals in her case plan. There was no evidence presented that Mother can provide stable housing or employment, she has failed to cooperate fully with WCCS, and failed to remain free of criminal activity. While Mother's testimony demonstrates that she hopes to be able to remain drug free and provide for the children, the best interest of the children is not served by another six months of unfulfilled hope where competent, credible evidence, points in the

opposite direction. Despite the effort of WCCS to provide an opportunity for reunification through case plan services, Mother chose not to complete any case plan services while the children were in the temporary custody of WCCS.

{¶ 40} "It is important to have finality in custody determinations to protect the best interest of the child[ren]." *In re A.L.A.*, 11th Dist. Trumbull No. 2016-T-0022, 2016-Ohio-5887, ¶ 20. The children need to know whom they may rely upon for their care and nurture, and as the juvenile court found, the only way to achieve this is by a stable, permanent, and healthy, home environment. The initiation of this case occurred almost two years ago, and considering the parents' repeated failures to substantially remedy the conditions causing the children's removal, permanency for the children is not promoted by granting the parents' motions for a six-month extension. As previously stated by this court, "a parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23; *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32. Therefore, the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence.

{¶ 41} Accordingly, appellants' assignments of error are overruled.

{¶ 42} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.