[Cite as *In re M.R.*, 2018-Ohio-5047.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | CASE NOS. CA2018-07-145 |
| M.R., et al. | : | CA2018-07-146 |
|  |  | CA2018-07-147 |
|  | : |  |
|  |  | O P I N I O N |
|  | : | 12/17/2018 |
|  | : |  |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2014-0287, JN2014-0288, and JN2015-0258

Jamie L. Landvatter, 10 Journal Square, Suite 300, Hamilton, Ohio 45011, guardian ad litem

D. Joseph Auciello, Jr., 6 South Second Street, Suite 309, Hamilton, Ohio 45011, for appellant, A.R.

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

**RINGLAND, P.J.**

{¶ 1} Mother-appellant ("Mother"), appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of M.R., B.R., and E.C.R. (referred to collectively, as the "children") to appellee, the Butler County Department of Job and Family Services ("BCDJFS").

{¶ 2} On July 24, 2014, BCDJFS filed complaints for M.R. and B.R. alleging dependency and neglect. Mother gave birth to M.R. on May 3, 2010 and B.R. on June 2, 2011. On March 31, 2015, the juvenile court adjudicated M.R. and B.R. dependent. On July 15, 2015, Mother gave birth to E.C.R. On September 15, 2015, BCDJFS filed a complaint alleging E.C.R. dependent. The juvenile court adjudicated E.C.R. dependent on December 10, 2015. Following the respective adjudications, BCDJFS implemented case plan services for Mother and the children remained in Mother's care under protective supervision. On September 22, 2015, the juvenile court granted BCDJFS temporary custody of the children and the agency placed them in a foster home.

{¶ 3} On September 25, 2017, BCDJFS moved for permanent custody. The juvenile court held four hearings between December 2017 and February 2018. The hearings revealed the following facts.

{¶ 4} Kelly Hurley, the BCDJFS caseworker assigned to this case, testified the initial concerns causing the children's removal from Mother's care included Mother's instability in living arrangements, her lack of engagement in mental health treatment, her failure to ensure the children's attendance at school, and possible physical abuse of another unrelated child in the home by Mother's then boyfriend. The agency attempted to address these issues while the children remained in Mother's custody by offering Mother mental health and parenting services. However, Mother failed to stay compliant with these services, which led to the initial removal in September 2015.

{¶ 5} Following removal, BCDJFS continued to provide intensive in-home parenting programs, mental health services, visitation with the children, and permitted Mother to attend the children's medical and mental health appointments. Initially, Mother's engagement with mental health counseling improved, but over time Mother's attendance became sporadic and she discontinued taking her prescribed psychiatric medications. The agency's concerns

regarding Mother's living arrangements did not improve. Mother had approximately eight different residences in three counties over the course of this case. Likewise, Mother was sporadically employed throughout the case and mostly relied on her parents or her boyfriend for financial assistance. Additionally, Mother failed to consistently take advantage of public assistance programs to help meet the needs of the children.

{¶ 6} In August 2017, the children returned to Mother's custody for approximately five weeks before being removed for a second time and placed back into foster care. During this period, BCDJFS became concerned with M.R. and B.R. missing a significant amount of school, Mother's inability to follow through with obtaining a pediatrician for two of the children, Mother's failure to obtain health insurance, and Mother's mental health. Mother's mental health was a concern because she began demonstrating aggressive behaviors towards agency personnel, failed to consistently engage with counseling, and failed to consistently take her prescribed medication.

{¶ 7} Following the second removal, the children returned to the same foster care placement they had prior to reunification. Hurley testified the children were bonded with one another and the foster family. The foster family was able to meet the children's basic needs and ensure they received their necessary medical and psychiatric care. Hurley detailed that the children's behavior significantly declined during reunification. Mother reported to Hurley that M.R. would hurt herself when upset, B.R. had become physically aggressive, and E.C.R. would bang her head on the floor, throw food, and try to bite Mother.

{¶ 8} The foster father testified and corroborated the behavioral regression discussed by Hurley. He testified that the children thrived when placed with his family, bonded with other family members, and they referred to himself and the foster mother as "New Mommy and Daddy." The foster family indicated a desire to adopt the children if the juvenile court granted permanent custody to BCDJFS.

{¶ 9} Tiffany Penn from Pressley Ridge testified that she began working with Mother in June or July 2016 with a goal of reunification. Penn was charged with observing visitation, correcting Mother's parenting behaviors where appropriate, and teaching proper parenting techniques. Penn testified Mother needed significant parenting education.

{¶ 10} Mother testified she desired to obtain custody of her children. She testified she was fit to parent the children and that she had engaged with case plan services, such as various parenting programs, mental health counseling, and visitation. Mother admitted that she had lived at many residences throughout the pendency of this case, but that she had resided at an apartment in Lebanon, Ohio for an extended period before moving to her current residence in Kettering, Ohio. Mother testified her visitation became more liberalized over time and that she was capable of meeting the children's basic needs. Mother confirmed her prior mental health diagnoses, including bipolar disorder, separation anxiety, general anxiety, depression, and post-traumatic stress disorder ("PTSD").

{¶ 11} On cross-examination, Mother detailed that she discontinued taking her prescribed medications because her benefits lapsed and that said benefits were suspended due to her failure to complete a required course. She indicated she had taken classes to work as a state tested nurse aide. However, she could not do so until her driver's license was reinstated. Mother confirmed the children's issues with school attendance and explained that her father drove the children to their therapy appointments but would not return them to school. Prior to the second removal, M.R. missed 7 of 12 school days, and B.R. missed 4 of 12. Additionally, the guardian ad litem ("GAL") for the children submitted a written report and recommendation recommending a grant of permanent custody to BCDJFS.

{¶ 12} On March 7, 2018, the magistrate issued a decision granting permanent custody to BCDJFS. Mother objected to the magistrate's decision and, on June 12, 2018, the juvenile court overruled Mother's objection and adopted the magistrate's findings and orders.

Mother appealed the juvenile court decision raising one assignment of error.

{¶ 13}   Mother's Sole Assignment of Error:

{¶ 14}   THE TRIAL COURT ERRED BY FINDING CLEAR AND CONVINCING EVIDENCE TO SUPPORT TRANSFER OF PERMANENT CUSTODY TO CHILDREN'S SERVICES FINDING THE FACTORS OF R.C. 2151.141(B) & (D) PRESENT.

{¶ 15}   Mother asserts the juvenile court erred by granting permanent custody to BCDJFS because its decision was not supported by clear and convincing evidence and against the manifest weight of the evidence.   Mother contends the juvenile court erred in finding by clear and convincing evidence that granting permanent custody was in the children's best interest.

{¶ 16}   As an initial matter, BCDJFS asserts that Mother failed to file specific objections and did not claim plain error on appeal; therefore, she waived the foregoing arguments.   Juv.R. 40(D)(3)(b)(iv) provides that, except for a claim of plain error, a party waives the right to assign error on appeal with respect to the juvenile court's adoption of any factual finding or legal conclusion "unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."   Objections must be specific and state with particularity all grounds for objection.   Juv.R. 40(D)(3)(b)(ii).   Further, the failure "to file specific objections is treated the same as the failure to file any objections."   *In re D.R.*, 12th Dist. Butler No. CA2009-01-018, 2009-Ohio-2805, ¶ 29.

{¶ 17}   Although Mother objected to the magistrate's decision, she did not specifically object to the magistrate's best interest findings and did not claim plain error on appeal. Rather, her objection included a nondescript statement asserting the magistrate abused its discretion.   Aside from asserting an incorrect standard of review, Mother's failure to file specific objections is the same as failing to file any objections, and therefore, she is precluded from raising the issue on appeal and from challenging the juvenile court's adoption

of the magistrate's findings. *See id.* at ¶ 30. Therefore, her sole assignment of error is overruled on this basis. Nevertheless, in the interest of justice, we will review the juvenile court's decision to determine if was supported by clear and convincing evidence and not against the manifest weight of the evidence. *See, e.g.*, *Miami Poplar Rentals, LLC v. Hudoba*, 12th Dist. Butler No. CA2013-06-094, 2014-Ohio-1323, ¶ 12.

{¶ 18} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 19} The state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's right to custody can be terminated. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*,

161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 20} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed, and a new trial ordered. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10.

{¶ 21} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the children. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from

whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 22} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 23} In granting BCDJFS' motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearings. With respect to the first statutory factor, the juvenile court found that following the initial removal, Mother's interactions with the children during visitation were observed to be positive and age appropriate. The children displayed happiness during visitation and are bonded to Mother. Upon their brief return to Mother's custody, the children displayed several behavioral

issues. E.C.R. displayed severe temper tantrums, frequently banged her head on the floor, and bit Mother and the other children. M.R. was physically aggressive, slapped and kicked her brother, and was defiant with Mother, including severe meltdowns and physical violence towards Mother and herself. B.R. was physically and verbally aggressive and displayed anxiety symptoms.

{¶ 24} The juvenile court found that after the second removal the children's behavior improved and that the children adjusted back to the rules and routines of the foster home. The children are doing well in their foster care placement and positively proceeding in therapy. Additionally, the foster family expressed an interest in adopting the children.

{¶ 25} In consideration of the second statutory factor, the juvenile court did not conduct an interview with the children. Rather, the juvenile court relied on the GAL's report to convey the children's wishes, which indicated M.R.'s desire to remain with her foster family. Further, the GAL recommended the children remain together and be placed in the permanent custody of BCDJFS.

{¶ 26} With respect to the third statutory factor, the juvenile court reviewed the children's custodial history and found the children were adjudicated dependent and had been in the temporary custody of BCDJFS for 12 or more months of a consecutive 22-month period.

{¶ 27} In considering the fourth statutory factor, the juvenile court found the children's need for a legally secure placement could only be achieved by granting permanent custody to BCDJFS. Specifically, the juvenile court found the children are clearly in need of a legally secure placement, as they have resided in foster care for an extended period. The juvenile court noted the agency's greatest concerns at the initial removal were Mother's mental health and her ability to provide consistent, appropriate parenting for the children. Throughout the case, BCDJFS provided Mother with multiple services, including three parenting education

programs, mental health treatment, and financial assistance, including gas vouchers, furniture, groceries, and clothing. However, Mother inconsistently engaged in these services. The juvenile court characterized her engagement as "minimal." The juvenile court found Mother failed to adequately address her mental health issues, which has impacted her ability to adequately parent the children. Further, Mother failed to maintain stable, independent housing and employment, and did not take advantage of the opportunity to attend the children's medical and therapy appointments.

{¶ 28} Despite completing some services, Mother failed when given the opportunity to demonstrate advancement in her ability to appropriately parent the children. The juvenile court found that upon reunification, Mother failed to take appropriate steps to transfer the children's medical and educational services to providers close to her residence. Mother claimed she made arrangements for M.R. and B.R. to attend mental health treatment, but the juvenile court found she failed to so. Further, Mother failed to take the children to follow up medical and dental appointments and to establish a pediatrician for M.R. and E.C.R. The juvenile court further found Mother failed to timely enroll M.R. and B.R. in school, and when school began, Mother failed to ensure the children's attendance, as M.R. missed 7 of 12 days and B.R. missed 4 of 12 days.

{¶ 29} Finally, the juvenile court found that Mother failed to demonstrate an ability to handle the children's behaviors, which as described above, significantly deteriorated upon reunification. The juvenile court found that Mother "demonstrated a marked lack of control over her anger, and displayed (in front of the children) angry, aggressive behaviors evincing ongoing mental health concerns." The concerns that led to the initial removal were markedly similar to the concerns that arose during reunification and caused the second removal. Therefore, the juvenile court found that Mother failed to demonstrate she could provide for the basic needs of the children and that they could be safely returned to her care.

{¶ 30} With respect to the fifth statutory factor, the juvenile court found that none of the factors in R.C. 2151.414(E)(7) thru (11) apply to this case.

{¶ 31} Based on the foregoing, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to BCDJFS. The juvenile court also found that pursuant to R.C. 2151.414(B) and (E), the children could not be placed with Mother within a reasonable time or should not be placed with her. However, we need not consider this finding, as the juvenile court's finding the children were adjudicated dependent and had been in the temporary custody of BCDJFS for 12 or more months of a consecutive 22-month period was supported by clear and convincing evidence. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 32} After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence. Although Mother testified she loves her children and believes reunification is in their best interest, there are compelling reasons to weigh the best interest factors in favor of permanent custody to BCDJFS.

{¶ 33} The record contains extensive evidence regarding Mother's continued inability to demonstrate that she can provide for the children's basic needs. At the outset of this case, the children remained in Mother's care under protective supervision. However, Mother chose not to take advantage of this opportunity to alleviate the agency's concerns, as the children were removed due to instability in living arrangements, Mother's lack of engagement with case plan services, and her inability to ensure the children's attendance at school. During the pendency of this case, Mother did engage with parenting classes, visitation, and some mental health services. However, her participation in case plan services in its totality has been sporadic. She failed to consistently engage with mental health services and to take prescribed psychiatric medication, she was only intermittently employed, and failed to obtain

a stable residence, as she resided at approximately eight different locations in three counties throughout this case.

{¶ 34} Nevertheless, BCDJFS provided Mother another opportunity to demonstrate she could meet the children's needs when custody was briefly returned. This period lasted a mere five weeks before the children were removed from her care for a second time. During this five-week period, Mother failed to ensure the children regularly attended school, to obtain health insurance, to obtain a pediatrician for two of the children, and to consistently engage with mental health services. Mother demonstrated aggressive behaviors towards BCDJFS personnel and the children likewise began demonstrating behavioral issues. Thus, despite the diligent efforts of BCDJFS to provide an opportunity for reunification through case plan services, Mother failed to demonstrate any real progress in her ability to adequately parent and provide for the children. Rather, the same concerns that caused the first removal similarly led to the second removal. *See In re E.W.*, 12th Dist. Warren Nos. CA2017-01-001 thru CA2017-01-003, 2017-Ohio-7215, ¶ 39 (affirming grant of permanent custody where the parent failed to make any meaningful progress in demonstrating she could provide for the children).

{¶ 35} "It is important to have finality in custody determinations to protect the best interest of the child[ren]." *In re A.L.A.*, 11th Dist. Trumbull No. 2016-T-0022, 2016-Ohio-5887, ¶ 20. The initiation of this case occurred approximately three and one-half years ago. During this time, Mother has demonstrated that she can neither provide for the children's basic needs nor consistently address her own mental health issues. Mother has consistently failed to follow through despite exhaustive efforts by BCDJFS. The children need to know whom they may rely upon for their care and nurture, and as the juvenile court found, the only way to achieve this is by a stable, permanent, and healthy home environment.

{¶ 36} Moreover, the children are bonded to one another and with their foster family,

who have expressed a desire for adoption. The foster family has been able to meet the children's basic needs and ensure they receive the medical and psychiatric care they need. The behavioral concerns at the time of the second removal have mostly subsided and the children are doing well and engaging in counseling. Additionally, the caseworker and the GAL recommended granting permanent custody to BCDJFS.

**{¶ 37}** Therefore, the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence.

**{¶ 38}** Accordingly, Mother's sole assignment of error is overruled.

**{¶ 39}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.