[Cite as *In re M.B.*, 2014-Ohio-5009.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2014-06-130 |
| M.B., et al. | : | CA2014-06-131 |
| | : | O P I N I O N |
| | | 11/10/2014 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2012-0125

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for appellant, Lorna B.

Jeannine C. Barbeau, 3268 Jefferson Avenue, Dayton, Ohio 45220, for Mar.B.

Marcelina C. Woods, 6644 San Mateo Drive, West Chester, Ohio 45069, guardian ad litem/attorney for Mad.B.

T. Randall Turner, 27 Church Street, Monroe, Ohio 45050, guardian ad litem for Lorna B.

Matthew O. Wagner, Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202, for Joe Statt

**PIPER, J.**

{¶ 1} Appellant, the mother of Mar.B. and Mad.B., appeals a decision of the Butler

County Juvenile Court, granting permanent custody of the two children to a children services agency. Butler County Department of Job and Family Services, Children Services Division, filed a complaint on March 23, 2012 alleging that appellant's two children, a son, age 12, and a daughter, age three months, were neglected and dependent. According to the complaint, the agency received a report that appellant's father had recently died and that appellant depended on him financially. The report stated that appellant was overwhelmed taking care of a newborn who had problems gaining weight and that she may not be competent to handle her situation because she did not appear to grasp even the simplest of life tasks.

{¶ 2} The complaint further alleged that the agency received several referrals in January 2012 regarding appellant's son. These referrals indicated that the child was cognitively delayed and had a learning disability, along with a history of poor hygiene, body odor and wearing dirty clothes that he had slept in. The reports also indicated that the child was taken to the emergency room for a rash that covered a large portion of his body.

{¶ 3} In addition, the complaint alleged that appellant's daughter was diagnosed with failure to thrive and although the hospital wanted to put the child on a feeding schedule, appellant indicated she would just feed the child when she cried. Children's Services workers began visiting with the family and additional concerns arose. These concerns included the mother tying a pacifier on a string around the baby's neck, her refusal to remove it when told to do so by Children's Hospital staff and her feeding the baby from old and dirty bottles. In addition, appellant was giving water to the baby because she claimed the baby was teething, which, according to medical professionals, is developmentally inaccurate and dangerous for the baby. Finally, the complaint indicated that the family was evicted from their home.

{¶ 4} At a hearing on May 25, 2012, appellant stipulated to findings of dependency in regards to both children. The agency continued to work with appellant, but little progress was made and the agency filed motions for permanent custody of the children on May 28, 2013.

After hearings on the motions, a magistrate granted the agency's motions for permanent custody. The trial court overruled objections and adopted the magistrate's decision.

{¶ 5} Appellant now appeals the trial court's decision to grant permanent custody of the children to the agency and raises two assignments of error for our review. In her first assignment of error, appellant argues that the trial court's decision to grant permanent custody of her daughter to the agency was not supported by sufficient credible evidence and was contrary to the manifest weight of the evidence. In her second assignment of error, appellant presents the same arguments with regard to the trial court's decision to grant permanent custody of her son to the agency.

{¶ 6} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers*, 138 Ohio App.3d 510, 520 (12th Dist.2000).

{¶ 7} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child

cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.,* 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 8} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children have been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion. However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the children's best interest.

{¶ 9} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 10} At the hearing, a social worker from Children's Hospital testified that at a newborn visit on January 5, 2012, the medical professionals were concerned that appellant's daughter had a five percent loss in her birth weight. At the next visit on January 10, 2012,

she had gained 10 grams, but the child's weight gain was inconsistent with what appellant said the child was being fed. At the following visit, the child had a six-percent decrease and was admitted to the hospital. The medical workers were also concerned because the child was dirty, and her clothes and blankets were soiled. The child was discharged on January 17, 2012 and at that time had gained a little over a pound. On January 20, 2012, the child had again lost weight. The hospital social worker indicated the facility workers were concerned with both the failure to thrive issues and with appellant's care for the child.

{¶ 11} An intervention specialist at the school appellant's son attended testified that the child was in her class in an inclusion room for two years. She indicated his ability levels were extremely low and that in fifth grade, he was reading at a kindergarten level, and doing second-grade-level math. She testified that the child did not do his homework and did not complete all of his classwork, and that he often came into class tired and fell asleep. She indicated the child had attendance problems, was frequently hungry, would wear the same clothes three or four days at a time and had a body odor. She gave him deodorant and sent hygiene supplies home. The teaching specialist testified that she called appellant and discussed the homework concerns, along with the hygiene issues. She indicated that sometimes after these discussions, things would improve for a few days, but would then fall back into the previous pattern. She testified that at the end of sixth grade, after the child was removed from his home, she noticed a huge improvement in his hygiene and homework. She testified that appellant's son needs a lot of extra support in regard to his education and that his past environmental factors had thwarted him academically.

{¶ 12} Wendi Lopes, a staff psychologist at Children's Hospital, testified that she evaluated appellant's son on September 16, 2013. She indicated his IQ is on the low-average range, but because of the testing variability, she believed it does not represent his full potential. She indicated the child has a weakness in his cognitive profile that does not fit

with ADHD, Asperger's or autism. She testified that the best explanation for the cognitive weakness is difficulties related to prenatal insults, physical neglect and emotional neglect, and a combination of the three difficulties overlapping and compounding one another. She indicated that with the son's results on testing, it is crucial for a parent to be consistently involved with him in school and homework.

{¶ 13} At the hearing, the agency caseworker testified that the agency has a history with appellant dating back to 2006 when the agency was involved with both appellant's older son, who is now an adult, and the son currently involved in this case. The caseworker testified regarding the current referrals and the agency's initial involvement in the case. She indicated that the agency began working with the family to preserve the children's placement in the home, but there were too many concerns. The caseworker discussed her personal observations of the problems, including the dirty and cluttered condition of the home and appellant's lack of understanding regarding basic child development and safety. She also discussed the son's history of poor hygiene, body odor and rash, and the concerns regarding his educational needs. The agency caseworker indicated that early in the case she discussed personal hygiene with appellant and went through specifics for improvement.

{¶ 14} The caseworker testified that the agency's case plan required appellant to complete in-home parenting education, maintain stable housing and income, and demonstrate an ability to meet the children's basic and special needs. The case plan also required appellant to engage in individual counseling and to complete a psychological examination.

{¶ 15} The Development of Living Skills (D.L.S.) program worked with appellant from March 2012 through February 2013. The caseworker testified that appellant participated and worked at the recommendations, but was unsuccessful in the program. The caseworker further testified that appellant moved nine times since the case started, including being

evicted from a home, and living in a homeless shelter at times. Appellant has been in her current residence since 2013 and it contains a bare minimum for the family. Appellant indicated to the caseworker that her son would sleep on an air mattress in the living room and her daughter would sleep on a baby mattress in an area near stairs with no gate. Appellant also told the caseworker that there was a large closet where her daughter could play, but on inspection, the caseworker found the small area contained a hot water heater and a furnace. In addition, the caseworker indicated that there were concerns with the current residence, as the agency had received reports that appellant had received an eviction notice, and that appellant lost her key shortly after moving in and was not locking her door. The caseworker further testified that during the case, appellant had fast food jobs and was currently working at a temporary agency.

{¶ 16} The D.L.S. worker also testified at the hearing and explained that she works with families in their homes to give additional parenting and life skills that are needed to run a household. She indicated that appellant participated in the program and made attempts at improvement, but still had difficulty and did not successfully complete the program. The D.L.S. worker discussed the specific areas in which she worked with appellant and the lack of real progress. She indicated appellant had the knowledge, and appeared to have an interest for change, but did not follow through.

{¶ 17} The caseworker testified that appellant completed the psychological evaluation as required by the case plan, and individual counseling was recommended. Katherine Lackner, a psychology assistant at C.D.C. Mental Health, performed a psychological assessment of appellant on May 18, 2012. She indicated that appellant had pretty significant overall hygiene issues, including a body odor. Lackner determined that appellant was functioning in the average to low-average range and diagnosed adjustment disorder with depressed mood. She recommended individual therapy and case management to help

appellant manage her hygiene issues and her household.  She also recommended parenting classes.

{¶ 18} Jessica Wagner, a therapist at C.D.C. Mental Health, testified that she began sessions with appellant on June 26, 2012.  She indicated appellant was diagnosed with a major depressive disorder and although appellant attended sessions and listened and tried hard, things "don't seem to stick," making repetition of the material necessary.  Like other witnesses, she indicated appellant has hygiene problems, as she has an odor and her hair is not clean.  Wagner testified that appellant was prescribed Zoloft, but she questioned appellant's compliance with taking the medication, because appellant's statements about the medication were inconsistent based on the dates of the prescriptions written.  Wagner indicated appellant has shown some progress in the area of expressing feelings and using words to show emotions, but in the areas of perspective-taking, problem-solving and coping skills, there has been essentially no progress.

{¶ 19} Because of concerns regarding appellant's lack of progress during the case, the agency requested an updated psychological evaluation.  The agency had concerns regarding whether appellant was unable to understand what the providers and agency were recommending or if there were underlying issues causing appellant's inability to grasp what was being recommended.  Appellant completed this evaluation with Dr. Charles Lee on August 1, 2013.  Dr. Lee diagnosed borderline intellectual functioning.  He recommended concrete examples to help appellant understand. Dr. Lee indicated appellant has good short-term memory and could repeat things stated to her, but did not necessarily understand what she was repeating.  He recommended an educational evaluation to determine if appellant has an undiagnosed learning disability.

{¶ 20} Stephanie Kramer, a psychology assistant, performed a psychological/educational evaluation of appellant on November 27, 2013.  She indicated

appellant's clothes were worn, she was malodorous, and her hair was unkempt and disheveled. Appellant showed Kramer a photo taken the previous day and Kramer noticed that appellant was still wearing the clothes she had worn the night before. Kramer diagnosed borderline intellectual functioning and indicated that appellant's ability to learn new information and apply the learned skills is significantly impacted by her cognitive defects. Kramer recommended that a trainer show appellant how to do things, help her do them, then have appellant do the tasks on her own, and that training involve use of specific examples.

{¶ 21} The caseworker testified that appellant was regular in her visitations with the children, which were supervised at a visitation center. She indicated some progress was observed, but there were definite concerns throughout visitation. Appellant had problems with food safety and left food out for long periods of times and brought expired food for the children. Because of the repeated problems with food safety during the visits, appellant was eventually not allowed to bring food for the children. Appellant was also observed having difficulty understating the cues from her daughter and agency staff often had to assist and help appellant in understanding what her daughter wanted and what appellant should or should not do with the child.

{¶ 22} The worker who supervised visitation also testified and indicated that appellant had a hard time feeding the children. Specifically, appellant had a hard time with understanding what not to feed both children and understanding cues from her daughter that the child was hungry or full. The worker indicated that she kept going "over and over" with appellant the proper things to feed her young daughter. She described examples of problems, such as appellant trying to feed the child grapes at three or four months old, which is an age when children are not eating solid food. In addition, appellant would bring outdated food, and would let food stay at room temperature beyond what is safe, such as leaving a bologna sandwich out for four or five hours. She indicated appellant also had problems with

diaper changes and appellant's son would almost take over sometimes. She also testified that appellant's clothes were not clean and her hair was not washed and she gave appellant shampoo and hygiene items to use. She indicated appellant is loving and affectionate and there is no doubt a bond exists between her and the children

{¶ 23} The caseworker testified that appellant's son was overweight and prediabetic when he was removed from the home, but has since reduced his weight from 217 to 179 pounds and is exercising and eating healthier. The son is cognitively delayed and is on an I.E.P. at school due to difficulty with reading, writing and math. An evaluation was performed and initially there was some concern that he may have Asperger's disease, but professionals determined his issues were more due to a lack of experience, exposure and introduction to different activities. He recently learned to tie his shoes and to ride a bicycle. Appellant's daughter has also done well since removal from the home and is no longer diagnosed with failure to thrive. She is currently meeting all of her developmental milestones.

{¶ 24} The caseworker testified that throughout the case, appellant has not been opposed to doing services, but the problem is in understanding or grasping what she is supposed to do from what she has learned through the services. She indicated the foster mother would like to adopt the children and the only other placement offered by appellant was not approved after a home study.

{¶ 25} The foster mother testified that the children have been in her custody almost two years. She reviewed the daughter's failure to thrive issues and discussed how she fed her every two hours. The foster mother reported the child is now doing well and is meeting her developmental milestones. When appellant's son first came to the foster home, he was over 200 pounds, could not tie his shoes, barely knew how to read, and did not know the proper way to shower, wash his hair or brush his teeth. The foster mother described working with appellant's son on nutrition and fitness and discussed the improvements he has made in

personal hygiene and in school. The foster mother testified that she would like to adopt both children, and indicated that if adoption were to occur, she would continue to facilitate ongoing contact with appellant.

{¶ 26} On December 3, 2012, Eckart Wallish, a psychology assistant, performed a parenting evaluation. Wallish observed appellant and the children during play and prepared a report of his observations and conclusions. Wallish determined that appellant is not yet at a point in her life where she would be able to take control of the children again and to provide for them. He indicated appellant was still in need of support and help in order to properly parent. He reported appellant was passive, rather than active in her interactions and there was concern whether appellant had the ability to provide stimulation in a developmentally appropriate manner and to provide for the safety of the children. Wallish indicated appellant's son seemed a bit parentified in his interactions with his sister and that the son had more confidence and ability to parent than appellant.

{¶ 27} Several of the witnesses testified that appellant left excessive amounts of texts or phone messages during short periods of time. In these messages, appellant expressed the same information or concerns repeatedly from one message to the next, sometimes as if she had forgotten she had already left the same message a short while ago. These messages often were left very late at night or in the very early hours of the morning.

{¶ 28} In granting the motion for permanent custody, the trial court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414 (D)(1)(a), the juvenile court found that appellant's son has a very close bond with his mother. The court also found that he has a close bond with his foster mother and his sister. The court further found that the foster mother is interested in adopting the children and has stated that she would continue to allow contact between the children and their mother, even if they were adopted. The court also found that appellant's daughter is bonded

- 11 -

with her mother and brother.

{¶ 29} With respect to R.C. 2151.414(D)(1)(b), the juvenile court indicated that the court did not interview either child regarding the child's wishes, but the guardian ad litem for each child recommended permanent custody. The court also noted that the son's attorney advocated against permanent custody.

{¶ 30} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the custodial history of the children. The court found that they have been in foster care since March 23, 2012. The permanent custody motion was filed on May 28, 2013, and the children have been in the agency's temporary custody for 12 or more of 22 months as defined in R.C. 2151.413(D)(1).

{¶ 31} In considering R.C. 2151.414 (D)(1)(d), the juvenile court found that the children are in need of a legally secure placement. The court indicated that the children's fathers have not been identified, no appropriate relatives have come forward as placement options, and no other motions for placement of the children have been filed. The court found that initially it appeared that the reasons for the children's removal from their mother's care could be alleviated as basic hygiene, parenting competence and strategies and residential stability appeared to be addressable concerns. The court indicated appellant's initial psychological evaluation identified services needed to address those issues and appellant participated in the services.

{¶ 32} The court further found that as the case progressed, it became clear that despite mother's participation, in the words of mother's therapist, she was just "not getting it." The court indicated the inability or unwillingness to incorporate the things she was learning into her life carried over to the parenting education classes with D.L.S. which the mother was unable to successfully complete. The court found appellant's personal hygiene remains a problem. The court found appellant's current residence was only marginally appropriate for

appellant's son, and not appropriate for her daughter. The court noted that the mother repeatedly demonstrated an inability to appropriately respond to her daughter's cues regarding her emotional and other needs.

{¶ 33} The court found that as a result, the agency sought other evaluations, but the results were similar to the observations of appellant's therapist. The court found that appellant does not appear to have any identifiable psychopathology that would prevent or inhibit her from making change in her life. While she suffers from depression, has cognitive limitations and is obsessive compulsive, these conditions, by themselves do not preclude appellant from making progress. The court indicated that "[u]nfortunately, mother has proven, for reasons that have escaped the professionals, to be unable to make the changes needed to be able to adequately care for [the children]." The court found appellant is "satisfied with herself the way she is, is inflexible, resistant to change, defensive, unable to identify any problems with her parenting, and resents being told what to do." The court noted that the D.L.S. program, which appellant engaged in, yet failed to successfully complete, is precisely the kind of program that was recommended in the psychological assessment. Finally, the court indicated that no other treatment or educational program has been identified by any professional that would provide further help. Based on these facts, the court determined that it was clear that appellant could not provide a legally secure placement for the children and that a grant of permanent custody to the agency was the only way a legally secure placement could be achieved.

{¶ 34} Based on a review of all of the best interest factors, the court found by clear and convincing evidence that granting permanent custody to the agency was in the best interest of appellant's daughter. With regard to appellant's son, the court found the case troubling because of the close bond between the child and his mother. However, the court found placement with his mother was simply not an option as the evidence is clear that she

has been unable to adequately care for him for some time. The court found there is no legal mechanism that would preserve the son's relationship with his mother and still give him a permanent legal placement. However, the court found the foster mother's testimony regarding her intention to continue visitations between appellant and the children credible and heartfelt. Based on all of the evidence, the court determined by clear and convincing evidence it was in the son's best interest to grant permanent custody to the agency.

{¶ 35} In her first assignment of error, appellant argues that the court's decision to grant permanent custody of her daughter to the agency was not supported by sufficient credible evidence and was against the manifest weight of the evidence. Appellant argues that the court erred in concluding that her daughter could not be placed with her within a reasonable amount of time, and in finding that permanent custody was "the best hope of permanency" for the child. She contends that she alleviated concerns regarding her parenting to a great extent and has demonstrated her ability to maintain stable housing for almost a year and employment for eight months. She also argues that she has a strong bond with her children and they enjoy spending time with her and, for the most part, interactions at visitations were appropriate. She further argues that one of the problems was an inability to read her daughter's cues as an infant, but she improved, and the need to read cues will resolve as the child gets older.

{¶ 36} However, after a thorough review of the record, we find the trial court's findings are supported by sufficient, credible evidence and are not against the manifest weight of the evidence. While appellant argues that she has alleviated the concerns in the case, the record supports the trial court's determination that appellant is unable to provide for the needs of her daughter. While at the time of the hearing, appellant had maintained her home for a period of time, the evidence indicated the home was not safe for a young child. In addition, there was testimony that eviction proceedings had begun.

{¶ 37} There was also substantial, credible evidence that appellant was unable to understand and provide for the child's developmental, nutritional and emotional needs, despite repeated instruction and support by the agency. Although appellant argues that her daughter is older and there is less of a need to understand cues to the child's needs, the evidence shows appellant was unable to even properly care for an older child in basic areas like hygiene, education and nutrition. Accordingly, appellant's first assignment of error is overruled.

{¶ 38} In her second assignment of error, appellant argues that the court's decision to grant permanent custody of her son to the agency was not supported by sufficient credible evidence and was against the manifest weight of the evidence. Appellant expresses the same arguments as those regarding her daughter. She also argues that the court gave insufficient consideration to her son's desire to return home. She further argues that she made sufficient progress in the areas of nutrition for her son, and although her son has developmental and educational deficits, the evidence does not support a conclusion that she failed to address the concerns or expressed an unwillingness to do so.

{¶ 39} As discussed with regard to appellant's daughter, her argument that she had made sufficient progress is contradicted by the evidence in the record. Despite services by the agency and psychological evaluations to determine how to better meet the needs of appellant's situation, appellant failed to make progress in even the most basic areas of parenting. When her son was removed from the home at the age of 12, he was overweight, dirty and unkempt, unable to perform simple tasks, and severely behind educationally. Furthermore, evidence indicated the child's educational problems are a result of his environment. Since removal, he has made remarkable progress in all areas. Appellant, however, despite repeated efforts by the agency and other providers, was still herself having hygiene issues. She made little progress in the area of parenting during the time of the

agency's involvement and despite the repeated psychological evaluations, there appears to be no other services that would help appellant progress.

{¶ 40} While appellant argues that the court did not give sufficient consideration to her son's wishes, the trial court's decision does, in fact, reflect that the court very carefully and conscientiously considered this issue. As discussed above, the court found it troubling that it had no other option to provide a legally secure placement for appellant's son other than one that would legally terminate his relationship with his mother. The court found that by all accounts, the two have a loving and appropriate bond. Nevertheless, court found that the evidence is clear that appellant cannot adequately provide for her son and has not been able to do so for some time. These findings are supported by the evidence in the record. Accordingly, appellant's second assignment of error is overruled.

{¶ 41} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.