[Cite as *In re E.A.*, 2019-Ohio-2964.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| E. A. | : | CASE NO. CA2019-02-012 |
| | : | O P I N I O N<br>7/22/2019 |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 16-D000093

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Clouse Law Office, Lauren L. Clouse, 7681 Tylers Place Boulevard, Suite 3, West Chester, Ohio 45069, for appellant

**RINGLAND, J.**

{¶ 1}  Appellant, the biological father of E.A., appeals from a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of E.A. to appellee, Warren County Children Services ("WCCS").  For the reasons detailed below, we affirm.

{¶ 2}  Mother tested positive for drugs throughout her pregnancy.  On July 2, 2014,

E.A. was born and tested positive for drugs. As a result, E.A. was placed in the temporary custody of WCCS while Mother worked towards reunification.

{¶ 3} There have been seven case plans throughout the pendency of this matter. The initial case plan included Mother and a different presumed father. However, later genetic testing confirmed Father's paternity in 2016. Due to the late establishment of paternity, Father had insufficient time to establish a bond with E.A. and therefore WCCS filed a new complaint to provide him with additional time to work the case plan.

{¶ 4} On October 6, 2016, the juvenile court proceeded with an adjudicatory hearing and E.A. was found to be a dependent child. On October 27, 2016, the juvenile court held a dispositional hearing and granted temporary custody of E.A. to WCCS.

{¶ 5} As part of Mother's case plan, she was to submit to random drug screens, comply with medication-assisted treatment, complete a drug and alcohol assessment, complete a mental health assessment, refrain from criminal activity, and to obtain and maintain income to provide for E.A.'s needs.

{¶ 6} Mother struggled with substance abuse until July 2017 when she successfully completed a drug treatment program and was succeeding with her case plan. This changed in September 2018 when Mother relapsed and tested positive for oxycodone. Following the positive drug screen, Mother stopped responding to the caseworker's phone calls and ceased interaction with WCCS. Since that time, Mother has not seen or communicated with E.A. and did not attend the permanent custody hearing. She has not participated in this appeal.

{¶ 7} When Father's paternity was established, WCCS developed a case plan for him. As part of his case plan, Father was to complete a mental health assessment and follow all recommendations, prove that he had stable income, maintain a safe and stable house, refrain from the use of illegal substances, and refrain from criminal activity.

{¶ 8} Father completed case plan assessments. The assessments listed no issues

with mental health or substance abuse. Throughout the proceedings Father was employed, but his housing situation was unverified. At the beginning of the case, Father resided in a one-bedroom apartment with his girlfriend. However, following separation from his girlfriend, Father moved in with a friend in July 2016. The caseworker attempted to see that home on multiple occasions but was ultimately unsuccessful. Father admitted that he could not take custody of E.A. because his housing, at the time, was inappropriate. Father then moved in with another friend in October 2016.

{¶ 9} Father initially exercised supervised visitation with E.A. Father's visitation was later increased to four hours a week unsupervised in June 2016. Though he was consistent with visitations in June and July of 2016, he exercised only half of his visits in October and November 2016. Father cancelled visits on 14 separate occasions. Furthermore, since the caseworker had not visited his house, she was unable to increase his visitation hours. In November 2016, Father stopped visiting E.A. regularly. Father last saw E.A. on January 27, 2017.

{¶ 10} In August 2017, Father attended a court hearing and indicated his desire to re-engage with the case plan. As a result, the caseworker requested that Father obtain updated mental health and substance abuse assessments. Father did not complete the assessments, claiming that the center cancelled his appointment.

{¶ 11} On January 18, 2018, WCCS moved for permanent custody. At the permanent custody hearing, the state presented the testimonies of the two caseworkers assigned to the case. Father testified on his own behalf. After taking the matter under advisement, the juvenile court granted permanent custody in favor of WCCS. Father now appeals, raising three assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING

EVIDENCE, THAT THE CHILD COULD NOT BE PLACED WITH FATHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH HIM, PURSUANT TO R.C. 2151.414(B)(1)(a)-(d).

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE MINOR CHILD HAD BEEN ABANDONED BY FATHER PURSUANT TO R.C. 2151.414(B)(1)(b).

{¶ 16} Assignment of Error No. 3:

{¶ 17} THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BEST INTEREST OF THE CHILDREN [sic], PURSUANT TO R.C. 2151.414(D), WAS REACHED BY GRANTING PERMANENT CUSTODY TO WARREN COUNTY CHILDREN SERVICES.

{¶ 18} In his three assignments of error, Father argues the juvenile court erred by granting permanent custody of E.A. to WCCS. Following a thorough review of the record, we find Father's assignments of error are without merit.

{¶ 19} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6.

{¶ 20} A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.* Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent

custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 21} As to the second prong, the trial court found three of the R.C. 2151.414(B)(1)(a)-(e) factors applied: E.A. was abandoned, had been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, and could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 22} On appeal, Father disputes the juvenile court's finding with respect to abandonment and placement within reasonable time. However, Father does not dispute the finding that E.A. had been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. Since that finding is undisputed, we conclude that Father's remaining arguments with respect to abandonment and placement within reasonable time

are moot. As noted above, the juvenile court need only make one of the five findings enumerated in R.C. 2151.414(B)(1). *In re B.C.*, 12th Dist. Warren Nos. CA2018-03-024 and CA2018-03-027, 2018-Ohio-2673, ¶ 18. Nevertheless, we will consider Father's arguments in light of the best interest factors.

{¶ 23} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 24} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that E.A. is bonded with her foster family and is thriving in that placement. Though Father spent time with E.A., and had been permitted unsupervised visitation, the record also reflects that Father cancelled visits on 14 different occasions and then simply stopped visiting her at all in early 2017. It is undisputed that Father last saw E.A. on January 27, 2017 and had not seen her in the two years leading

up to the permanent custody hearing.

{¶ 25} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that, due to her young age, E.A. was unable to express her wishes, but the Guardian ad Litem recommended that permanent custody be granted in favor of WCCS.

{¶ 26} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the custodial history of E.A. The juvenile court found E.A. was adjudicated dependent and had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 27} In considering R.C. 2151.414(D)(1)(d), the juvenile court found E.A. is in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way her needs can be achieved. Specifically, the juvenile court noted that Mother and Father have been unable to meet E.A.'s needs or remedy the conditions resulting in her removal. Father has not seen E.A. in two years and Mother's whereabouts were unknown at the time of the permanent custody hearing. The juvenile court noted that the best chance for E.A. to achieve stability was through the grant of permanent custody and adoption.

{¶ 28} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court found that none of the factors set forth apply.

{¶ 29} Based on these findings, the juvenile court found by clear and convincing evidence that it was in E.A.'s best interest to grant permanent custody to WCCS. On appeal, Father erroneously states that he completed nearly all of his case plan services. Father also argues that his failure to visit E.A. was only due to WCCS's failure to visit his residence in Columbus. Father believes that his initial compliance with the case plan suggests that he could attain custody within a reasonable time.

{¶ 30} We have carefully and thoroughly reviewed the evidence in this case and find

that the juvenile court's determination regarding the best interest of E.A. is supported by clear and convincing evidence. In this case, Mother and Father both abandoned E.A. by failing to visit or contact her for more than 90 days. *See* R.C. 2151.011(C). Though Father initially complied with the case plan, he abruptly stopped visitation with E.A. and had not seen her in the two years prior to the permanent custody hearing. Furthermore, Father failed to comply with requirements of home verification during the pendency of the proceedings and, when he did attempt to reengage with WCCS, failed to complete new mental health and drug and alcohol assessments. Father cites his inflexible work schedule, illness, communication mishaps, and alleged appointment cancellations as reasons why he could not visit E.A. more regularly or comply with case plan requirements, but we find these excuses are unpersuasive. Father had ample time and opportunity to demonstrate his fitness to parent E.A. but chose not to. As a result, we find E.A.'s best interests were served in the grant of permanent custody.

{¶ 31} In light of the foregoing, we find the juvenile court's decision was supported by clear and convincing evidence and find no error in the juvenile court's decision to grant permanent custody to WCCS. Father's three assignments of error are overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.