[Cite as *In re J.G.*, 2023-Ohio-2712.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE: : 

    J.G. :     CASE NO. CA2023-04-029

    :     O P I N I O N
    8/7/2023

    :

    :

    :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2019 JC 05214

Christopher Bazeley, for appellant.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

**PIPER, J.**

{¶ 1} Appellant ("Mother") appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her child, J.G., to appellee, Clermont County Department of Job and Family Services ("CCDJFS").[1]

---

1. Paternity was never established.

**Facts and Procedural History**

{¶ 2} On November 6, 2019, CCDJFS filed a complaint alleging J.G., a boy born on June 13, 2015, was a neglected child. The complaint alleged that J.G. is deaf and severely behind in his communication skills. He would also frequently come to school dirty and in the same clothes multiple days in a row. The agency stated that it was unable to determine where J.G. lives but noted that Mother was homeless. Following a hearing, the juvenile court granted emergency custody to the agency.

{¶ 3} On January 9, 2020, the juvenile court held an adjudicatory hearing. The magistrate found that J.G. has cochlear implants to help him hear and communicate. Mother admitted to losing six external processors for the cochlear implants. It further found Mother lacked an appreciation for the importance of the processors and the wide array of services that had been made available to her. Mother did not object to the findings and agreed that CCDJFS should have temporary custody.

{¶ 4} A case plan was prepared with the goal of reunification. Among other things, the case plan included parenting education, stable housing and income, mental health treatment, and intensive engagement in J.G.'s special needs services. The juvenile court extended temporary custody twice on September 22, 2020, and again on February 25, 2021. CCDJFS moved for permanent custody on August 5, 2021, but later withdrew the request and made further attempts at reunification.

{¶ 5} J.G. was returned to Mother's custody with the agency retaining protective supervision on March 11, 2022. Three months later, Mother sent an email to the caseworker stating that she could no longer take care of J.G. and that the agency needed to get him right away:

> Shyla I need you to come get him today, please.
>
> * * * I CAN NO LONGER TAKE CARE OF HIM ANYMORE. IT'S

PHYSICALLY AND MENTALLY EXHAUSTING DAY IN AND
OUT.

IT'S REALLY EFFECTING MY PHYSICAL AND MENTAL
HEALTH REALLY BAD.

I CAN'T TAKE CARE OF MY THYROID ISSUE OR OTHER
HEALTH ISSUES THAT HAS BEEN GOING ON FOR THE
PAST YEAR.

[J.G.] DESERVES BETTER THAN WHAT I CAN GIVE HIM.

I KNOW THAT I PERSONALLY CAN NOT PROVIDE ALL OF
HIS NEEDS.

I AM SO SORRY TO LET YOU DOWN AND EVERYONE ELSE
DOWN.

BUT ALL THIS CHRONIC STRESS IS OVERWHELMING ME
AND KILLING ME.

**{¶ 6}** After J.G. was removed from Mother's home, the caseworker did not hear from Mother for more than two months. During this time, Mother attended a pre-surrender counseling session where she indicated that she did not want J.G. to know who she was or for J.G. to have his birth history.

**{¶ 7}** On August 2, 2022, CCDJFS moved for permanent custody of J.G. CCDJFS alleged J.G. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and that it was in J.G.'s best interest for the agency to be awarded permanent custody. A hearing on the motion was held on September 30, 2022, at which the caseworker, a social worker, and J.G.'s foster mother testified. [2]

**{¶ 8}** The evidence revealed that when J.G. came into the temporary custody of the agency, he was severely delayed and exhibited explosive and unsafe behaviors. J.G. thrives on consistency, which was not present in Mother's care. Over time, the agency was

---

2. The juvenile court also heard testimony on a motion to intervene filed by the mother of Mother's boyfriend (no biological relation). The motion to intervene was denied and no appeal was taken.

able to provide J.G. with the support he needed to develop his communication skills and control his behavior.

{¶ 9} Mother was initially hesitant to engage with the agency but eventually began working with a parent educator and enrolled in some services. The agency attempted reunification and J.G. was returned to Mother's care. However, while in her care, J.G. regressed and became socially withdrawn. Mother also declined certain services for J.G. and was inconsistent with J.G.'s appointments. Just a few months after regaining custody, Mother informed the agency that she could no longer care for J.G. He was then returned to his foster family. At the time of the permanent custody hearing, J.G. was verbal but remained developmentally delayed.

{¶ 10} Mother did not appear at the permanent custody hearing due to a claimed illness. Mother was provided an opportunity to testify over the phone. Mother stated that she did not want to surrender her parental rights to J.G. and complained about not receiving enough help throughout the pendency of the case. She also complained about the caseworker and the foster care system.

{¶ 11} After hearing the evidence, the magistrate found, by clear and convincing evidence, that it was in J.G.'s best interest to grant permanent custody to CCDJFS. Mother filed an objection, which was overruled. Mother timely appealed the juvenile court's decision, raising a single assignment of error for review.

**Analysis**

{¶ 12} THE JUVENILE COURT'S DECISION TERMINATING [MOTHER'S] PARENTAL RIGHTS WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶ 13} In her sole assignment of error, Mother argues the juvenile court's decision granting permanent custody of J.G. to CCDJFS was against the weight of the evidence because it was not in his best interest. Before a natural parent's constitutionally protected

liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 748, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 14} In determining whether a juvenile court's decision to grant a motion for permanent custody is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-094 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.*, 12th Dist. Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 15.

{¶ 15} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton

No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 16} It is undisputed that J.G. was in the temporary custody of CCDJFS for more than 12 months of a consecutive 22-month period at the time CCDJFS filed its motion for permanent custody. Therefore, we give consideration to the applicability of the best interest factors.

{¶ 17} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors. This includes, but is not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 18} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. The juvenile court found that Mother "no doubt has an impact" on J.G. but "the majority of the impact is negative." The court noted that J.G. sometimes becomes tearful and aggressive when Mother is discussed. While J.G. occasionally mentioned wanting to be with Mother, the evidence suggested it was a response to "when he is not getting his own way" or when J.G. did not want to follow rules. The court stated Mother has less structure in her life which leads to "chaos, confusion, and uncertainty." J.G.'s kinship placement at the time of trial did provide him with the structure that was needed. That placement was no longer available due to other needs and obligations of the kinship family.

{¶ 19} The juvenile court found that J.G. has difficulty verbalizing due to his disability. Although he was seven years old, the juvenile court determined that he lacked the ability to understand or articulate his best interest. The GAL recommended that CCDJFS be granted permanent custody.

{¶ 20} The juvenile court reviewed the custodial history of J.G. and found he has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. The juvenile court also considered J.G.'s need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to CCDJFS.

{¶ 21} This case commenced upon a determination that Mother was unable to provide for J.G.'s fundamental needs. J.G. was severely behind in his ability to communicate. Mother participated in some case plan requirements and was able to regain custody of J.G. temporarily. Mother was unable to provide the level of structure and attention J.G. requires. While in her care, J.G. regressed and became socially withdrawn. Mother became overwhelmed and attempted to surrender J.G. While Mother apparently

changed her mind, the juvenile court concluded that Mother failed to demonstrate that she could care for J.G. or handle the stress of taking care of herself and J.G. at the same time. Finally, the juvenile court found that none of the factors in R.C. 2151.414(E)(7) to (11) applied. After weighing the evidence, the juvenile court found by clear and convincing evidence that it was in J.G.'s best interest to grant permanent custody to CCDJFS.

{¶ 22} Mother argues that the juvenile court's decision is against the manifest weight of the evidence. Yet, Mother's brief is very sparse. She makes certain factual statements with little elaboration.[3] She begins by stating that she testified that she taught J.G. how to bathe and dry himself and that she is proud of the progress he made. She states that she only agreed to surrender her parental rights after being encouraged to do so by the agency. She points to her testimony that she knows what is best for J.G. "as his biological mother." Yet, she does not address how she would be able to assist J.G. with special needs. Instead, Mother blames the agency for failing to support her and claims the email she sent was a result of simply being upset. Mother maintains that she made progress in her case plan and has further improved her situation by voluntarily enrolling in trauma therapy.

{¶ 23} We have carefully and thoroughly reviewed the arguments and the evidence in this case and find that the juvenile court's determination regarding the best interest of J.G. is supported by clear and convincing evidence and was not against the manifest weight of the evidence. "A parent is afforded a reasonable, not an indefinite, period to remedy the conditions causing the child's removal." *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 41. We agree with the juvenile court that despite substantial assistance from the agency that Mother failed to demonstrate an ability to care for J.G. While Mother

---

3. For example, Mother argues there is nothing in the record "to suggest that the court attempted to ask J.G. what his desires are." But the court did attempt to consider J.G.'s wishes. It ultimately concluded that J.G. was unable to understand or articulate his perceived best interest. It even noted that J.G. did, at times, express an interest in being with Mother. Mother does not explain how any further inquiry into J.G.'s "desires" would alter the best interest analysis.

briefly regained custody, she became so overwhelmed that she returned custody to the agency. In the email she sent to the caseworker, Mother was unequivocal—she could not care for J.G. any longer and needed the agency to take care of him. While she apparently feels differently now, "[a] child's life is not an experiment that can be left to chance." *In re K.G.*, 12th Dist. Clermont Nos. CA2020-08-047, CA2020-08-048, and CA2020-08-049, 2021-Ohio-1182, ¶ 57

**{¶ 24}** We do not deny that Mother made some progress in her case plan, however, it is well established that even completion of case plan requirements does not preclude a grant of permanent custody. *In re S.U.*, 12th Dist. Clermont No. CA2014-07-047, 2014-Ohio-5166, ¶ 35. The main concern is not whether a parent has successfully completed a case plan, but whether the parent has "substantially remedied the concerns that caused the removal from the parent's custody." *In re V.R.R.*, 12th Dist. Butler No. CA2022-08-079, 2023-Ohio-185, ¶ 35. In the present case, Mother has not remedied the concerns that caused removal, nor has she demonstrated an ability to care for J.G. and his special needs. The juvenile court was correct in determining that J.G.'s best interest is served with an award of permanent custody to the agency.

## Conclusion

**{¶ 25}** We conclude the juvenile court did not err by determining that it was in J.G.'s best interest to grant permanent custody to CCDJFS. The juvenile court's decision is not contrary to the manifest weight of the evidence. Mother's sole assignment of error is overruled.

**{¶ 26}** Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.